Herbert C. Ross, Jr. (HR 8482)
Olshan Grundman Frome Rosenzweig & Wolosky LLP
Park Avenue Tower
65 East 55th Street
New York, New York 10022
Telephone: (212) 451-2300

*Attorneys for Defendants Select Comfort Wholesale Corporation,*
*Select Comfort Retail Corporation, and Select Comfort Corporation*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SLEEPY'S, LLC,<br><br>                              Plaintiff,<br><br>    - against -<br><br>SELECT COMFORT WHOLESALE<br>CORPORATION, SELECT COMFORT<br>RETAIL CORPORATION and SELECT<br>COMFORT CORPORATION,<br><br>                              Defendants. | Civil Action No.<br><br>07 CV 4018 (Platt, J.) (Lindsay, M.J.) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

Page No.

TABLE OF AUTHORITIES ............................................................................................ i

INTRODUCTION ......................................................................................................... 1

STATEMENT OF FACTS .......................................................................................... 2

ARGUMENT ................................................................................................................ 6

I.     STANDARD ON A RULE 12(b)(6) MOTION TO DISMISS. ................................... 6

II.    PLAINTIFF'S BREACH OF CONTRACT, BREACH OF THE IMPLIED COVENANT AND UNFAIR COMPETITION CLAIMS FAIL BECAUSE THE DEALER AGREEMENT EXPIRED BEFORE ANY ALLEGED BREACHES OR INJURIES OCCURRED ................................................................ 7

A.  Plaintiff Alleged a Breach of Contract Occurring After The Dealer Agreement Expired and, Therefore, Fails To State a Claim on Its First Cause of Action ............................................................................................... 7

1.   The Dealer Agreement expired on September 30, 2006 and was not extended or renewed ...................................................................... 7

2.   The Plaintiff's breach of contract claim fails because the Dealer Agreement expired before the allegedly breaching statements occurred. ................................................................................................ 9

B.  Plaintiff Bases Its Breach of the Implied Covenant Claim on the Expired Dealer Agreement and, Therefore, Fails to State a Claim on Its Sixth Cause of Action. ...................................................................................... 10

C.  Plaintiff Bases Its Unfair Competition Claim on the Expired Dealer Agreement and, Therefore, Fails to State a Claim on Its Seventh Cause of Action ................................................................................................ 12

III.   PLAINTIFF'S CONTRACTUAL INDEMNIFICATION CLAIM FAILS BECAUSE THE INDEMNIFICATION CLAUSE APPLIES TO CLAIMS MADE BY THIRD-PARTIES, NOT CLAIMS MADE BETWEEN PLAINTIFF AND SELECT COMFORT AND, THEREFORE, PLAINTIFF FAILS TO STATE A CLAIM ON ITS NINTH CAUSE OF ACTION. ................................................................................................................. 13

## TABLE OF CONTENTS (continued)

**Page No.**

IV.  **PLAINTIFF DID NOT PLEAD FACTS SUFFICIENT TO SUSTAIN SLANDER CLAIMS AND HAS, THEREFORE, FAILED TO STATE A CLAIM ON ITS SECOND, THIRD, FOURTH, AND FIFTH CAUSES OF ACTION.** ...............................................................................................15

    A.  Each and Every Slander Claim Fails on the Basis of Plaintiff's Consent................15

    B.  Even if Sleepy's Consent to Slander Were Not a Complete Defense, the Plaintiff Has Failed To Meet the Pleading Requirements in Defamation and Slander Actions. .....................................................................................................18

V.  **PLAINTIFF'S CLAIM OF VIOLATION OF THE LANHAM ACT FAILS BECAUSE THE ALLEGED STATEMENTS DO NOT CONSTITUTE ADVERTISING OR PROMOTION UNDER THE LANHAM ACT, AND PLAINTIFF HAS, THEREFORE, FAILED TO STATE A CLAIM ON ITS EIGHTH CAUSE OF ACTION.** ..................................19

**CONCLUSION** ..............................................................................................................22

## TABLE OF AUTHORITIES

<u>Page No.</u>

## FEDERAL CASES

*ARI And Co., Inc. v.  Regent International Corporation*,
   273 F. Supp. 2d 518 (S.D.N.Y. 2003)......................................................................11

*American Needle & Novelty, Inc. v. Drew Pearson Marketing.*,
   820 F. Supp. 1072 (N.D. Ill. 1993) ......................................................................20

*Auto-Chlor System of Minnesota, Inc. v. JohnsonDiversey*,
   328 F. Supp. 2d 98020 (D. Minn. 2004)...............................................................21

*Bancinsure, Inc. v. Marshall Bank, N.A.*,
   453 F.3d 1073 (8th Cir. 2006) ...............................................................................8

*Bell Atlantic Corporation v. Twombly*,
   127 S. Ct. 1955 (2007)............................................................................................6

*Bourne Co. v. MPL Communications, Inc.*,
   751 F. Supp. 55 (S.D.N.Y. 1990) .........................................................................15

*Burns v. Cook*,
   458 F. Supp. 2d 29 (N.D.N.Y. 2006).................................................................18, 19

*Cannizzaro v. Bache, Halsey Stuart Shields, Incorporated, S.D.*,
   81 F.R.D. 719 (S.D.N.Y. 1979) ........................................................................18, 19

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147 (2d Cir. 2002)....................................................................................2

*Conkle v. Jeong*,
   73 F.3d 909 (9th Cir. 1995) ..................................................................................16

*Coastal Abstract Service, Inc. v. First American Title Insurance Company*,
   173 F.3d 725 (9th Cir. 1999) ................................................................................20

*Crane Co. v. Coltec Industries, Inc.*,
   171 F.3d 733 (2d Cir. 1999).....................................................................................8

*Design Strategies, Inc. v. Davis*,
   384 F. Supp. 2d 649 (S.D.N.Y. 2005)................................................................12, 13

i

## **TABLE OF AUTHORITIES** (continued)

**Page No.**

*Druyan v. Jagger,*
  No. 06 Civ. 13729 (CM), 2007 WL 2592352 (S.D.N.Y. Aug. 29, 2007) .............................11

*Fashion Boutique of Short Hills, Inc. v. Fendi, USA, Inc.,*
  No. 91 Civ. 4544 (MGC), 1998 WL 259942 (S.D.N.Y. May 21, 1998) ..........................15, 17

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.,*
  942 F. Supp. 209 (S.D.N.Y. 1996) ...................................................................................20, 22

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.,*
  314 F.3d 48 (2d Cir. 2002) ...............................................................................17, 20, 21, 22

*Feifer v. Prudential Insurance Company of America,*
  306 F.3d 1202 (2d Cir. 2002)...............................................................................................8

*Gucci America, Inc. v. Duty Free Apparel, LTD.,*
  277 F.Supp.2d 269 (S.D.N.Y. 2003)....................................................................................12

*In re Stevenson Associates., Inc.,*
  777 F.2d 415 (8th Cir. 1985) ...............................................................................................8

*Jones v. Capital Cities/ABC Inc.,*
  874 F. Supp. 626 (S.D.N.Y. 1995) ......................................................................................18

*Jones v. Clinton,*
  974 F. Supp. 712 (E.D. Ark. 1997)......................................................................................16

*K/D Weatherbeaters, Inc. v. Gull Lake Industries, Inc.,*
  698 F.2d 954 (8th Cir. 1983) ..............................................................................................14

*Kelewae v. Jim Meagher Chevrolet, Inc.,*
  952 F.2d 1052 (8th Cir. 1992) ............................................................................................16

*Kivel v. WealthSpring Mortgage Corporation,*
  398 F. Supp. 2d 1049 (D. Minn. 2005)................................................................................11

*Litman v. Massachusetts Mutual Life Insurance Company,*
  739 F.2d 1549 (11th Cir. 1984) ..........................................................................................16

*Papasan v. Allain,*
  478 U.S. 265 (1986)..........................................................................................................6, 22

OPPENHEIMER: 2534011 v01 10/02/2007

## <u>TABLE OF AUTHORITIES</u> (continued)

<u>Page No.</u>

*Sequa Corporation v. Gelmin,*
    851 F. Supp. 106 (S.D.N.Y. 1994) .........................................................................15

*Sevel Argentina S.A. v. General Motors Corporation,*
    46 F. Supp. 2d 261 (S.D.N.Y. 1999).................................................................9, 10

*Seven-Up Co. v. Coca-Cola Co.,*
    86 F.3d 1379 (5th Cir. 1996) ...............................................................................21

*Solas v. Jones,*
    No. 04 Civ. 2980 (RCC), 2005 WL 525444 (S.D.N.Y. 2005) .................................17

*Sports & Travel Marketing, Inc. v. Chicago Cutlery Company,*
    811 F. Supp. 1372 (D. Minn. 1993).....................................................................8, 11

*Sports Unlimited v. Lankford Enterprises, Inc.,*
    93 F. Supp. 2d 1164 (D. Kan. 2000).....................................................................21

*Sundram v. Brookhaven National Laboratories,*
    424 F. Supp. 2d 545 (E.D.N.Y. 2006) ..............................................................10, 11

*Ticktin v. Fabrics,*
    No. CV-05-2756 (PHX/FJM), 2007 WL 604923 (D. Ariz. Feb. 22, 2007) ...........................16

*United States v. J & D Enterprises of Duluth,*
    955 F. Supp. 1153 (D. Minn. 1997).....................................................................14

*Viking Supply v. National Cart Company, Inc.,*
    310 F.3d 1092 (8th Cir. 2002) .........................................................................9, 10

## STATE CASES

*Bass v. Nooney Company,*
    646 S.W.2d 765 (Mo. 1983) ...............................................................................16

*Braegelmann v. Horizon Development Company,*
    371 N.W.2d 644 (Minn. Ct. App. 1985)...............................................................14

*Carl Bolander & Sons, Inc. v. United Stockyards Corppration,*
    215 N.W.2d 473 (Minn. 1974)............................................................................8

OPPENHEIMER: 2534011 v01 10/02/2007

## TABLE OF AUTHORITIES (continued)

*First Bank of South Dakota, N.A. v. Ahlsten,*
No. C0-93-418, 1993 WL 268362 (Minn. Ct. App. July 20, 1993) ........................................14

*Goldman v. White Plains Center For Nursing Care, LLC,*
43 A.D.3d 251, 840 N.Y.S.2d 788 (1st Dep't 2007) ...............................................................8

*Hooper Associates, LTD. v. AGS Computers, Inc.,*
74 N.Y.2d 487, 548 N.E.2d 903 (1989)................................................................................14

*Levine v. Shell Oil Company,*
28 N.Y.2d 205, 269 N.E.2d 799 (1971)...............................................................................14

*LoPresti v. Massachusetts Mutual Life Insurance Company,*
30 A.D.3d 474, 820 N.Y.S.2d 275 (2d Dep't 2006) ........................................................12, 13

*Minevitch v. Puleo,*
9 A.D.2d 285, 193 N.Y.S.2d 833 (1st Dep't 1959) ..........................................................12, 13

*Mullenaux v. Graham County,*
82 P.3d 362 (Ariz. Ct. App. 2004)......................................................................................16

*Park v. Lewis,*
139 A.D.2d 961, 528 N.Y.S.2d 250 (4th Dep't 1988)......................................................16, 18

*Starr v. Starr,*
251 N.W.2d 341 (Minn. 1977).............................................................................................8

*Teichner v. Bellan,*
7 A.D.2d 247, 181 N.Y.S.2d 842 (4th Dep't 1959).........................................................16, 18

*Wells v. Belstrat Hotel Corporation,*
212 A.D. 366, 208 N.Y.S. 625 (1st Dep't 1925) .......................................................16, 17, 18

*Williams v. School District Of Springfield,*
447 S.W.2d 256 (Mo. 1969) ..............................................................................................16

OPPENHEIMER: 2534011 v01 10/02/2007

**TABLE OF AUTHORITIES** (continued)

Page No.

## SECONDARY SOURCES

William Lloyd Prosser, et al.,
  *Prosser & Keeton on Torts*, § 114 (5th ed. 1984)....................................................................16

Restatement (Second) of Torts § 577 (1977).................................................................................16

5 Wright & Miller § 1216 ..............................................................................................................6

v

## INTRODUCTION

In a misguided attempt to place blame on Select Comfort companies for its own business failures, Plaintiff filed this lawsuit which contains claims that fail on the face of the Complaint. Plaintiff alleges that Select Comfort employees made slanderous or defamatory statements regarding Plaintiff which impaired Plaintiff's ability to fully enjoy a contract between the parties and its ability to sell Select Comfort products.  However, the allegedly defamatory or slanderous statements identified in the Complaint post-date the expiration of the contract.  In addition, Plaintiff did not allege that Select Comfort made the statements to *any* customer.  Rather, the Complaint merely identifies twenty isolated statements solicited by Plaintiff's agents sent to Select Comfort's stores for the purpose of soliciting comments about Plaintiff.

From these alleged statements, Plaintiff attempts to allege nine causes of action against Select Comfort.  However, each of Plaintiff's nine causes of action fail because either (1) it is based on an expired contract and actions occurring after the expiration; (2) it is based on alleged statements solicited and consented to by Plaintiff's agents; (3) Plaintiff cannot identify any potential customer of the Plaintiff who heard the alleged statements and/or (4) it is based on a few isolated statements occurring in a market containing millions of potential customers.

For these reasons and for other reasons more specific to particular claims and discussed in the body of this memorandum, the Court should dismiss the Complaint with prejudice.

1

## STATEMENT OF FACTS[1]

### I.   DEFENDANT SELECT COMFORT

Defendants Select Comfort Wholesale Corporation, Select Comfort Retail Corporation, and Select Comfort Corporation (hereinafter collectively "Select Comfort") are Minnesota corporations and employers headquartered in Minnesota.  (Compl. ¶¶ 2–4.)  Select Comfort is a bed retailer and designs, manufactures, and markets a line of adjustable-firmness mattresses featuring air-chamber technology, known as the Sleep Number® bed.  (Compl. ¶¶ 5, 10.)  Select Comfort's beds are sold through its retail stores and selected bedding retailers.  (Compl. ¶ 5.)

As one method of selling its products, Select Comfort teams up with various bedding retailers, which might also be considered competitors, and allows those retailers to market and sell a limited line of Select Comfort products.  (Compl. ¶ 5.)  Select Comfort refers to these retailers as "Retail Partners."  (*Id.*)  Select Comfort employs the Retail Partners program to increase the market penetration and sales of its products and uses the program in various bedding markets throughout the nation.  (Compl. ¶ 11.)

### II.   PLAINTIFF SLEEPY'S, LLC

Plaintiff Sleepy's, LLC is a Delaware limited liability company with its principal place of business in New York.  (Compl. ¶ 1.)  Plaintiff is in the business of marketing and selling mattresses and bedding products.  (Compl. ¶ 9.)  From June 17, 2005 to September 30, 2006, Plaintiff served as one of Select Comfort's Retail Partners.  (Compl. ¶ 12; Ex. A § 9(a).)

---

[1]   The Statement of Facts is drawn from (1) the Complaint, the allegations of which Select Comfort accepts as true for the purposes of this motion only, and (2) documents incorporated by attachment, incorporated by reference, necessarily relied upon in the Complaint, and/or information generally known to Plaintiff when drafting its Complaint.  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002).

OPPENHEIMER: 2534011 v01 10/02/2007

## III.   CONTRACT BETWEEN SELECT COMFORT AND SLEEPY'S

Plaintiff was a Retail Partner of Select Comfort from June 17, 2005 to September 30, 2006 pursuant to a contract between the parties called the "Select Comfort Corporation Dealer Agreement – Sleepy's, Inc." (hereinafter "Dealer Agreement").   (Compl. ¶ 12; Ex. A § 9(a).) Select Comfort did not renew the Dealer Agreement, and it is no longer in effect.   (Compl. Ex. B.)

Under the Dealer Agreement, whether to renew the contract beyond the September 30, 2006 termination date was in the sole discretion of Select Comfort.   (Compl. ¶ 16.)   The termination provision of the Dealer Agreement provided, in relevant part:

> (a)     Initial Term.     Subject to earlier termination in accordance with any provision of this Agreement, the term of this Agreement shall commence as of the Effective Date and will expire September 30, 2006 (the "Initial Term").
>
> (b)     Renewal Periods.   At least sixty (60) days prior to the expiration of the Initial Term, Select Comfort will, at its sole discretion, provide [Sleepy's] our proposed Retail Partner Agreement.

(Compl. Ex. A § 9(a), (b).)

Under the Dealer Agreement, Select Comfort supplied Plaintiff with specifically identified Select Comfort products, and Plaintiff was to market and sell those products in its stores.   (Compl. ¶¶ 12–13.)   However, Plaintiff was not the only outlet for Select Comfort products in the region.   Customers could also purchase a Sleep Number® bed and related Select Comfort items at a Select Comfort retail store.   (Compl. ¶ 5.)

Unfortunately for both parties, and unlike many different retail partnerships, the retail partnership with Plaintiff was a failure from a business perspective.   Plaintiff was unable to successfully market and sell Select Comfort products in its stores.   (Compl. ¶ 15.)   In a January 11, 2007 letter, Keith Spurgeon, Select Comfort's Senior Vice President and General Manager, expressed that Plaintiff's senior management lacked a commitment to the success of the

3

program.   (Compl. Ex. B.)   As a result, Select Comfort elected not to renew the Dealer Agreement. (*Id.*)

 Select Comfort did not make this decision lightly.  Rather, Select Comfort requested a meeting with Plaintiff's officials from the time of expiration (September 2006) until January 2007. (Compl. Ex. B.)   Select Comfort requested the meeting "to review the performance of the Select Comfort/Sleepy's relationship and to agree on appropriate next steps for both parties." (Compl. Ex. B.)  While Select Comfort awaited the meeting, it continued to provide Plaintiff with Select Comfort products.   (Compl. Ex. B.)   Select Comfort did this because it was unsure whether it would ultimately execute a new contract with Plaintiff after holding the meeting and did not want to pull its products from a potential Retail Partner due to the disruption in marketing and sales activities such an action would cause. (Compl. Ex. B.)

 However, Select Comfort's providing of products to Plaintiff from September 30, 2006 to January 2007 did not and could not extend the Dealer Agreement.  By the terms of the Dealer Agreement, the parties' post-termination conduct could not extend the term of the agreement by waiver. (Compl. Ex. A § 9(e).)  In fact, the only manner of waiving the termination or expiration of the agreement was by express written waiver. (*Id.*)  The Dealer Agreement provided:

> (e)    Waiver of Termination.    The conduct by either of the parties after termination of the Agreement, *including without limitation any sale of the Products*, will not be construed as a waiver of the termination of this Agreement or as an extension or continuation of the term of this Agreement beyond the period specified in the notice of termination; any such termination of this Agreement may only be waived by an express written waiver of the termination signed by the terminating party.

(Compl. Ex. A § 9(e)) (emphasis added).

 Plaintiff has not alleged that Select Comfort waived the expiration of the Dealer Agreement by an express written waiver.   Rather, the Complaint alleges an extension by conduct—an impossibility under the unambiguous contract language. (Compl. ¶ 17.)

4

## IV.   "SHOPPING REPORTS" AND PLAINTIFF'S CLAIMS

The crux of Plaintiff's case is alleged slander elicited by Plaintiff's agents in a series of "shopping reports" or "shops." (Compl. ¶¶ 19–30.)  A "shop," as explained in the Complaint, is "a common tool used in the industry in which a particular retail company uses its *own* employees, or *hires* independent professional shopping agencies, to shop at competitor's retail outlets and report their experiences, in order to evaluate that competitor's business practices." (Compl. ¶ 19) (emphasis added).  The Complaint alleges that these shoppers elicited defamatory statements from Select Comfort employees regarding Select Comfort products sold by Plaintiff and Plaintiff's service.  (Compl. ¶ 20.)

Plaintiff bases each of its claims on the allegedly defamatory statements, all but one of which occurred after the expiration of the Dealer Agreement.[2]  The Complaint attempts to state nine causes of action, including (1) a breach of contract claim; (2) four slander *per se* claims; (3) a claim for an alleged breach of the implied covenant of good faith and fair dealing; (4) an unfair competition claim; (5) a claim for an alleged violation of the Lanham Act; and (6) a claim for contractual indemnification.

The Complaint, however, does not identify any persons, other than agents of the Plaintiff, to whom Select Comfort published any allegedly slanderous statements.   In fact, Plaintiff's agents solicited and thereby consented to all the statements identified in the Complaint.  (Compl. ¶¶ 19–20.)  In addition, Select Comfort allegedly made all but one of the statements after the Dealer Agreement expired and the only other alleged statement was heard solely by Plaintiff's agent.  (Compl. Ex. E.)  For these reasons and others discussed in this memorandum, all nine

---

[2]   One alleged statement occurred on September 4, 2006, during the term of the Dealer Agreement.  (Compl. Ex. E.)  However, there is no allegation that the statement was directed to or heard by anyone other than Plaintiff's agent, so it could not form the basis for the alleged breach of the Dealer Agreement.  (*Id*. at 1.)

OPPENHEIMER: 2534011 v01 10/02/2007

causes of action fail to state a claim upon which relief can be granted and the Court should dismiss this action in its entirety with prejudice.

## ARGUMENT

## I.  STANDARD ON A RULE 12(b)(6) MOTION TO DISMISS.

A "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, ___ U.S. ___, 127 S. Ct. 1955, 1964 (2007) (alteration in original). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Id.* Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

In *Twombly*, the United States Supreme Court clarified that the standard for dismissal under Rule 12 is <u>not</u> the oft-cited misconception that a complaint may be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 1968–69. This notion should be retired and is "best forgotten." *Id.* at 1969. A complaint must plead facts, not conclusions or speculations, and may not be pinned on the hope that future discovery will reveal a case. *See id.* at 1968–69. If a plaintiff has not sufficiently pled facts entitling him to relief, then "this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id. (*citing 5 Wright & Miller § 1216, at 233–34).

OPPENHEIMER: 2534011 v01 10/02/2007

II. **PLAINTIFF'S BREACH OF CONTRACT, BREACH OF THE IMPLIED COVENANT, AND UNFAIR COMPETITION CLAIMS FAIL BECAUSE THE DEALER AGREEMENT EXPIRED BEFORE ANY ALLEGED BREACHES OR INJURIES OCCURRED.**

    A. **Plaintiff Alleges a Breach of Contract Occurring After The Dealer Agreement Expired and, Therefore, Fails To State a Claim on Its First Cause of Action.**

The bases of Plaintiff's breach of contract claim are isolated statements allegedly made by Select Comfort employees which "impair[ed], infring[ed] upon or adversely affect[ed] the character, reputation and good will" of Plaintiff. (Compl. ¶¶ 49–51.) However, upon close reading of Plaintiff's Complaint, it becomes clear that all but one of the alleged statements occurred *after* the Dealer Agreement expired.[3] Therefore, because there was no contract between the parties at the time of the alleged statements, there can be no cause of action for breach of contract arising from the alleged statements.

       1. **The Dealer Agreement expired on September 30, 2006 and was not extended or renewed.**

Plaintiff's allegation that Select Comfort did not terminate the Dealer Agreement until January 11, 2007 is contrary to the express terms of the Dealer Agreement and the factual allegations in Plaintiff's own Complaint. The Dealer Agreement set the date of contract expiration as September 30, 2006 and provided that no action, other than an express written renewal, could extend the date of expiration. (Compl. Ex. A §§ 9(a), (e).)

---

[3] The purportedly defamatory statement on September 4, 2006 is not alleged to have been made to anyone other than Plaintiff's agent and therefore need not be further addressed. (Compl. Ex. E.) Such a statement, made only to Plaintiff's agent, could not "impair, infringe upon or adversely affect the character, reputation and good will" of Plaintiff and does not support a claim for breach of contract.

7

Under both New York and Minnesota law, the Court must look to and apply the clear and unambiguous terms of the Dealer Agreement.[4]  *Goldman v. White Plains Ctr. For Nursing Care, LLC*, 43 A.D.3d 251, 253, 840 N.Y.S.2d 788, 789–90 (1st Dep't 2007) (dismissing breach of contract claim where contract expired by its own terms before alleged breach because "where . . . the terms of an agreement are clear and unambiguous, its plain meaning should be enforced . . ."); *Feifer v. Prudential Ins. Co. of Am.*, 306 F.3d 1202, 1210 (2d Cir. 2002) ("It is axiomatic that where the language of a contract is unambiguous, the parties' intent is determined within the four corners of the contract, without reference to external evidence."); *Sports & Travel Mktg., Inc. v. Chicago Cutlery Co.*, 811 F. Supp. 1372, 1378 (D. Minn. 1993) ("Parties to an express contract are entitled to have their rights and duties adjudicated exclusively by its terms.") (citing *In re Stevenson Assocs., Inc.*, 777 F.2d 415, 421 (8th Cir. 1985) (citing *Starr v. Starr*, 251 N.W.2d 341, 342 (Minn. 1977) (per curiam); *Carl Bolander & Sons, Inc. v. United Stockyards Corp.*, 215 N.W.2d 473, 476 (Minn. 1974))).  The Court must interpret and apply the unambiguous terms of the Dealer Agreement as a matter of law and may do so on this motion to dismiss.  *Crane Co. v. Coltec Indus., Inc.*, 171 F.3d 733, 737 (2d Cir. 1999) (recognizing that under New York law contract "interpretation is a matter of law . . . and . . . may be resolved by summary judgment or Rule 12(b)(6) dismissal."); *Bancinsure, Inc. v. Marshall Bank, N.A.*, 453 F.3d 1073, 1075 (8th Cir. 2006) (recognizing that under Minnesota law "contract interpretation . . . construction and effect are questions of law.") (internal quotations omitted).

Here, under its unambiguous terms, the Dealer Agreement expired on September 30, 2006 and Select Comfort could not extend it by conduct.  (Compl. Ex. A §§ 9(a), (e).)  And contrary to Plaintiff's allegation, Select Comfort's provision of product to Plaintiff after

---

[4]   According to the terms of the Dealer Agreement, Minnesota law applies to Plaintiff's contract claims.  (Compl. Ex. A § 11(d).)

OPPENHEIMER: 2534011 v01 10/02/2007

September 30, 2006 did not and could not extend the Dealer Agreement.  The Dealer Agreement provided that "conduct by either of the parties after termination of the Agreement, *including without limitation any sale of the Products*, will not be construed as a waiver of the termination of this Agreement or as an extension or continuation of the term of this Agreement . . . ." (Compl. Ex. A § 9(e)) (emphasis added).  Plaintiff cannot ignore the unambiguous language of the Dealer Agreement in its attempt to state a claim.

> **2.     The Plaintiff's breach of contract claim fails because the Dealer Agreement expired before the allegedly breaching statements occurred.**

Plaintiff's breach of contract claim fails whether the Court applies Minnesota or New York law.  Under the law of both states, the Plaintiff's claim fails because the allegedly breaching actions occurred after the expiration of the Dealer Agreement.  *See Sevel Argentina S.A. v. Gen. Motors Corp.*, 46 F. Supp. 2d 261, 268 (S.D.N.Y. 1999) (dismissing a breach of contract claim where the alleged breach occurred after the contract expired by its terms despite the parties' continuing relationship because "when the contract expired, so too, did defendant's obligations under that contract."); *Viking Supply v. Nat'l Cart Co., Inc.*, 310 F.3d 1092, 1098 (8th Cir. 2002) (plaintiff's breach of contract claims dismissed where the activities allegedly constituting the breach occurred after the contract expired).

Plaintiff bases its breach of contract claim on isolated statements made between November 2006 and March 2007, after the expiration of the Dealer Agreement.  Plaintiff alleges that Select Comfort violated the contract by making statements that:

> (a) the Select Comfort products sold at Sleepy's were inferior to those sold at Select Comfort stores for a variety of reasons, (b) Sleepy's offered inferior sales terms and service, (c) Sleepy's products are likely to be infested with dust mites (which, as Select Comfort knew, customers are prone to confuse with bed bugs), and (d) the Select Comfort brand was being withdrawn from Sleepy's (implying, or expressly asserting, that Sleepy's would deliver inferior warranty and customer service).

9

(Compl. ¶ 50.)  None of these alleged statements, however, could breach the contract because there was no contract in place to breach.  *See Sevel Argentina S.A.*, 46 F. Supp. 2d at 268; *Viking Supply*, 310 F.3d at 1098.  The Dealer Agreement expired by its own terms in September 2006, all but one of the alleged statements were made after that, and the only other alleged statement does not state a claim.  (Compl. Ex. A § 9(a); Ex. E.)   It is therefore axiomatic, and case law supports, that none of the statements could breach the expired and now non-existent contract, and Plaintiff's breach of contract claim must fail.  *See Sevel Argentina S.A.*, 46 F. Supp. 2d at 268; *Viking Supply*, 310 F.3d at 1098.

### B. Plaintiff Bases Its Breach of the Implied Covenant Claim on the Expired Dealer Agreement and, Therefore, Fails to State a Claim on Its Sixth Cause of Action.

Just as in the breach of contract claim, the Plaintiff bases its claim of breach of the implied covenant of good faith and fair dealing on allegedly defamatory statements made by Select Comfort employees to Plaintiff's agents.  (Compl. ¶¶ 66–71.)  However, Plaintiff fails to state a claim for relief on this claim of breach of the implied covenant because all but one of the alleged statements were after expiration of the Dealer Agreement.[5]   Again, it does not matter whether the Court applies the laws of New York or Minnesota; either way, Plaintiff's breach of the implied covenant claims fails because no existing contract supports the claim.  Therefore, this Court should dismiss this cause of action.

Under both New York and Minnesota law, the implied covenant of good faith and fair dealing only exists as to enforceable contracts.[6]  The implied covenant does not expand the scope

---

[5]   Again, the statement allegedly made during the term of the Dealer Agreement does not support this cause of action because there is no allegation that anyone other than Plaintiff's agent heard the statement.  (Compl. Ex. E.)

[6]   Under New York and Minnesota law, the Plaintiff's claim also fails because neither state recognizes breach of an implied covenant of good faith and fair dealing as an independent cause of action.  *See Sundram v. Brookhaven Nat'l Labs.*, 424 F. Supp. 2d 545, 584–85

OPPENHEIMER: 2534011 v01 10/02/2007

of the contract and does not survive the expiration or termination of the contract.  *Druyan v. Jagger*, No. 06 Civ. 13729 (CM), 2007 WL 2592352, *6 (S.D.N.Y. Aug. 29, 2007); *ARI & Co., Inc. v.  Regent Int'l Corp.*, 273 F. Supp. 2d 518, 523 (S.D.N.Y. 2003) ("New York law is clear that the implied covenant cannot be used to create independent obligations beyond the contract."); *Kivel v. WealthSpring Mortg. Corp.*, 398 F. Supp. 2d 1049, 1057 (D. Minn. 2005) (recognizing that under Minnesota law a claim for breach of implied covenant "does not exist independent of or beyond the scope of the underlying contract.")

Here, because there was no contract in place between the parties at the time Select Comfort allegedly made the "breaching" statements, no implied covenant existed for Select Comfort to breach.  *Druyan*, 2007 WL 2592352, at *6; *ARI & Co., Inc.*, 273 F. Supp. 2d at 523; *Kivel*, 398 F. Supp. 2d at 1057.  Any implied covenant expired with the Dealer Agreement on September 30, 2006, all but one of the allegedly defamatory statements forming the basis of Plaintiff's claim occurred after September 30, 2006, and the only other alleged statement does not state a claim.  (Compl. Ex. A § 9(a); Ex. E.)  Therefore, Plaintiff fails to state a claim for breach of an implied covenant of good faith and fair dealing, and the Court must dismiss this cause of action.  *Druyan*, 2007 WL 2592352, at *6; *ARI & Co., Inc.*, 273 F. Supp. 2d at 523; *Kivel*, 398 F. Supp. 2d at 1057.

---

(E.D.N.Y. 2006); *Sports Travel and Mktg., Inc. v. Chicago Cutlery Co.*, 811 F. Supp. 1372, 1383 (D. Minn. 1993).  This cause of action fails for the sole reason that Plaintiff also brought a breach of contract claim and the claims are duplicative. *ARI & Co., Inc. v.  Regent Int'l Corp.*, 273 F. Supp. 2d 518, 522 (S.D.N.Y. 2003) (holding that breach of implied covenant claim cannot survive where "the conduct allegedly violating the implied covenant is also the predicate for breach . . . of an express provision in the underlying contract.") (alteration in original).

OPPENHEIMER: 2534011 v01 10/02/2007

C.     **Plaintiff Bases Its Unfair Competition Claim on the Expired Dealer Agreement and, Therefore, Fails to State a Claim on Its Seventh Cause of Action.**

The Plaintiff's unfair competition claim fails because it does not identify any property right or commercial benefit which the actions of Select Comfort injured.   The Plaintiff erroneously alleges that its rights under the Dealer Agreement form a proper basis for an unfair competition claim.  (Compl. ¶¶ 73–76.)  However, because the Dealer Agreement was expired at the time of the alleged unfair competition, Plaintiff had no property right in or benefit stemming from the Dealer Agreement.   Therefore, the Complaint does not state a claim for unfair competition.[7]

In order to maintain an action for unfair competition, the Plaintiff must allege a property right or benefit to which it is entitled.  *LoPresti v. Mass. Mut. Life Ins. Co.*, 30 A.D.3d 474, 476, 820 N.Y.S.2d 275, 277 (2d Dep't 2006) (unfair competition claim properly dismissed where complaint did not allege "bad faith misappropriation of a commercial advantage which belonged exclusively to plaintiff"); *Design Strategies, Inc. v. Davis*, 384 F. Supp. 2d 649, 675 (S.D.N.Y. 2005) (unfair competition claim dismissed where plaintiff could not demonstrate "a benefit or property right that belonged to it in any real or legal sense").

Where the alleged property right or benefit existed in a contract, the property right or benefit expires with the expiration or termination of the contract.  *See e.g., Minevitch v. Puleo*, 9 A.D.2d 285, 287, 193 N.Y.S.2d 833, 835 (1st Dep't 1959).  The holding in *Minevitch* is directly

---

[7]   Plaintiff may actually be attempting to articulate a claim for product disparagement.   This claim also fails.   Although such a claim is deficient on multiple grounds, one glaring inadequacy is the failure to allege special damages.   In order to allege product disparagement the Plaintiff must allege special damages.  *Gucci Am., Inc. v. Duty Free Apparel, LTD.*, 277 F. Supp. 2d 269, 277 (S.D.N.Y. 2003).   Special damages are not sufficiently pleaded unless the Plaintiff names "the persons who cease to be customers . . . and [itemizes] the losses."  *Id.*  Plaintiff has not done so here.

OPPENHEIMER: 2534011 v01 10/02/2007

applicable here.  In *Minevitch*, the court dismissed an unfair competition claim where the claim was based upon the rights found in an expired contract.  *Id.*  The court determined that a personal employment contract expired with the death of the employer.  *Id.*  Because the estate of the deceased party had no remaining property right after the expiration of the contract and it based its unfair competition claim on actions post-dating the expiration, the court dismissed the Plaintiff's unfair competition claim.  *Id.*

The result must be the same here.  Plaintiff cannot identify a property right or benefit on which to base an unfair competition claim.  The contract between the parties expired on September 30, 2006.  (Compl. Ex. A § 9(a).)  Plaintiff's complaint alleges unfair competition in the form of slanderous statements from November 2006 to March 2007—after the expiration of the Dealer Agreement.[8]  Therefore, at the time of the alleged unfair competition, Plaintiff had no property right or benefit stemming from the Dealer Agreement.  *Minevitch*, 9 A.D.2d at 287, 193 N.Y.S.2d at 835.  Because the Complaint fails to allege an essential element of unfair competition, the Court must dismiss this cause of action.  *LoPresti*, 30 A.D.3d at 475-76, 820 N.Y.S.2d at 277; *Minevitch*, 9 A.D.2d at 287-88, 193 N.Y.S.2d at 835; *Design Strategies, Inc.*, 384 F. Supp. 2d at 675.

**III.   PLAINTIFF'S CONTRACTUAL INDEMNIFICATION CLAIM FAILS BECAUSE THE INDEMNIFICATION CLAUSE APPLIES TO CLAIMS MADE BY THIRD-PARTIES, NOT CLAIMS MADE BETWEEN PLAINTIFF AND SELECT COMFORT AND, THEREFORE, PLAINTIFF FAILS TO STATE A CLAIM ON ITS NINTH CAUSE OF ACTION.**

Plaintiff claims that under the terms of the Dealer Agreement, Select Comfort is obligated to indemnify Plaintiff for any damages from any personal or advertising injury or damage to personal property to the Plaintiff alleged in this lawsuit.  (Compl. ¶¶ 82–86.)  This is simply not

---

[8]   The only statement alleged during the term of the Dealer Agreement does not state a claim because it was made only to Plaintiff's agent.  (Compl. Ex. E.)

13

OPPENHEIMER: 2534011 v01 10/02/2007

the case.  The indemnification clause applies to claims made by third-parties against Plaintiff, not

claims made by Plaintiff against Select Comfort.  The indemnification provision provides:

> Indemnification Obligations of Select Comfort.  Select Comfort will indemnify
> Retail Partner against and hold Retail Partner harmless from any costs, damages,
> expenses or liabilities, including reasonable attorneys' fees and court costs, for
> any personal or advertising injury to, or damage to personal property of, any
> person to the extent caused by: (i) the Products as sold by Select Comfort to
> Retail Partner; (ii) the negligent, reckless, intentional or willful acts or omissions
> of Select Comfort, its agents, employees, subcontractors or invitees; (iii) the
> breach of any express or implied warranty of Select Comfort; (iv) the use of
> Select Comfort's advertising materials related to the Products; or (v) any breach
> by Select Comfort of the terms of this Agreement.

(Compl. Ex. A § 10(a).)

Indemnity is defined as "the right of one party held liable to another to shift the entire

burden of liability *to a third party* . . . ."  *U.S. v. J & D Enter. of Duluth*, 955 F. Supp. 1153, 1157

(D. Minn. 1997).  And indemnification clauses do not apply to lawsuits between the parties to

the contract unless such an application "can be clearly implied from the language and purpose of

the entire agreement and the surrounding facts and circumstances."  *Hooper Assocs., LTD. v.*

*AGS Computers, Inc.*, 74 N.Y.2d 487, 491-92, 548 N.E.2d 903, 905 (1989).  Courts strictly

construe such clauses against the party seeking indemnification "because it is unnatural that one

would agree to indemnify another when otherwise under no such legal obligation."  *K/D*

*Weatherbeaters, Inc. v. Gull Lake Indus., Inc.*, 698 F.2d 954, 956 (8th Cir. 1983) (citing *Levine*

*v. Shell Oil Co.*, 28 N.Y.2d 205, 211, 269 N.E.2d 799, 801 (1971)); *see also Braegelmann v.*

*Horizon Dev. Co.*, 371 N.W.2d 644, 646 (Minn. Ct. App. 1985) (holding that indemnity

provisions "are strictly construed against the party seeking indemnification"); *First Bank of*

*South Dakota, N.A. v. Ahlsten*, No. C0-93-418, 1993 WL 268362, *1 (Minn. Ct. App. July 20,

1993) (same).  Therefore, indemnification clauses do not apply to suits by one party of the

contract against another party to the contract unless the clause refers "exclusively or

OPPENHEIMER: 2534011 v01 10/02/2007

unequivocally to claims between the parties." *Sequa Corp. v. Gelmin*, 851 F. Supp. 106, 110–11

(S.D.N.Y. 1994) (internal quotations omitted) (citing *Hooper*, 74 N.Y.2d 487; *Bourne Co. v.

MPL Comm., Inc.*, 751 F. Supp. 55, 57 (S.D.N.Y. 1990)).

The indemnification clause here does not provide for indemnification for anything other

than third-party claims.  Nothing in the clause is "exclusively or unequivocally referable to

claims between the parties themselves or support an inference that [Select Comfort] promised to

indemnify [Plaintiff] . . . in an action on the contract." *Sequa Corp.*, 851 F. Supp. at 110–11.  In

addition, the notice provision in the Dealer Agreement, just as the notice provision in *Hooper*

and *Sequa Corp.*, "unmistakably [relates] to third-party claims" and does not contemplate an

action by Plaintiff against Select Comfort for injuries to Plaintiff.  *Hooper*, 74 N.Y.2d at 492;

*Sequa Corp.*, 851 F. Supp. at 111. Therefore, "construing the indemnification clause as

pertaining only to third-party suits affords a fair meaning" to the contract and Plaintiff's

contractual indemnity claim fails.[9]  *Id.*

## IV.   PLAINTIFF DOES NOT PLEAD FACTS SUFFICIENT TO SUSTAIN SLANDER CLAIMS AND HAS, THEREFORE, FAILED TO STATE A CLAIM ON ITS SECOND, THIRD, FOURTH, AND FIFTH CAUSES OF ACTION.

### A.   Each and Every Slander Claim Fails on the Basis of Plaintiff's Consent.

Each slander claim fails because each claim is premised on a statement solicited by

Plaintiff's agent.  When a party or a party's agent asks the defendant to comment, the requesting

party consents to any resulting defamation and slander. *Fashion Boutique of Short Hills, Inc. v.

Fendi, USA, Inc.*, No. 91 Civ. 4544 (MGC), 1998 WL 259942, *5 (S.D.N.Y. May 21, 1998)

("*Fashion Boutique I*") ("When a plaintiff engages an agent whose mission is to induce

---

[9]   Plaintiff's contractual indemnification claim also fails to the extent it seeks indemnification for the alleged breach of the Dealer Agreement.  Plaintiff failed to assert a viable breach of contract claim for the reasons stated above and cannot avoid those deficiencies by simply masking its breach of contract claim as an action for contractual indemnification.

OPPENHEIMER: 2534011 v01 10/02/2007

defamatory statements, the plaintiff consents to any such resulting defamation."); *Teichner v. Bellan*, 7 A.D.2d 247, 251, 181 N.Y.S.2d 842, 846 (4th Dep't 1959); *Wells v. Belstrat Hotel Corp.*, 212 A.D. 366, 369, 208 N.Y.S. 625, 627-28 (1st Dep't 1925).  Consent "confers an absolute immunity or an absolute privilege upon the defendant" and is a complete defense to Plaintiff's slander claims.  *Teichner*, 7 A.D.2d at 251, 181 N.Y.S.2d at 846; *see also Park v. Lewis*, 139 A.D.2d 961, 962, 528 N.Y.S.2d 250, 251 (4th Dep't 1988) (holding that consent is complete defense to action on defamatory statements).

New York is not alone on this point.  Multiple jurisdictions throughout the nation follow the rule that a plaintiff's defamation action cannot survive where the plaintiff invited the commentary.  *See e.g.*, *Ticktin v. Fabrics*, No. CV-05-2756 (PHX/FJM), 2007 WL 604923, *1–2 (D. Ariz. Feb. 22, 2007) (citing *Mullenaux v. Graham County*, 82 P.3d 362, 368 (Ariz. Ct. App. 2004); *Jones v. Clinton*, 974 F. Supp. 712, 732 (E.D. Ark. 1997) ("It is axiomatic that the 'invited defamation,' or the issuance of a defamatory statement wherein the injured party precipitated the statement's release, is not actionable.") (citing *Kelewae v. Jim Meagher Chevrolet, Inc.*, 952 F.2d 1052, 1055 (8th Cir. 1992)); *Conkle v. Jeong*, 73 F.3d 909, 917 n.1 (9th Cir. 1995); *Litman v. Mass. Mut. Life Ins. Co.*, 739 F.2d 1549, 1560 (11th Cir. 1984); *Williams v. Sch. Dist. of Springfield*, 447 S.W.2d 256, 269 (Mo. 1969), *abrogated on other grounds by Bass v. Nooney Co.*, 646 S.W.2d 765, 773 (Mo. 1983)).  In addition, New York's application of the consent rule is consistent with the view of multiple secondary sources.  *See e.g.*, Restatement (Second) of Torts § 577 cmt. e (1977); William Lloyd Prosser, et al., *Prosser & Keeton on Torts*, § 114 at 823 (5th ed. 1984).

Here, the Plaintiff's agents invited and consented to Select Comfort employees' commenting on Plaintiff.  In each instance of alleged slander in Plaintiff's Complaint, the

16

Plaintiff's agent specifically asked a Select Comfort employee about Plaintiff or another Retail Partner. (Compl. ¶¶ 19–20.) Without such a prompt, the Select Comfort employee would not have made any comment regarding Plaintiff, and Plaintiff cannot use such solicited comments as a basis of a claim. *See Solas v. Jones*, No. 04 Civ. 2980 (RCC), 2005 WL 525444, *4 (S.D.N.Y. 2005) (defamation claims dismissed because except for the solicitation of the comments, the defendant would not have made the allegedly defamatory statements); *Wells*, 212 A.D. at 369, 208 N.Y.S. at 627-28 (same).

The facts of this case are nearly identical to the facts in the *Fashion Boutique* series of court holdings. In *Fashion Boutique*, the plaintiff sold the defendant's products and was the sole retail outlet in the New York City metropolitan area for defendant's products from 1983 to 1989. *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 53 (2d Cir. 2002) ("*Fashion Boutique III*"). In October 1989, defendant opened its own retail outlet for its products on Fifth Avenue in New York City. *Id.* Starting in October 1989, plaintiff's sales of defendant's products sharply and steadily declined until plaintiff's store went out of business in 1991. *Id.* Plaintiff sued defendant, alleging that defendant had a corporate policy to "misrepresent the quality and authenticity of the products sold" at plaintiff's store which drove plaintiff out of business. *Id.* The plaintiff attempted to prove the allegations, in part, through proof of "conversations between [defendant's] personnel and . . . undercover investigators hired to pose as shoppers." *Id.* The court in *Fashion Boutique I* dismissed the plaintiff's slander claims as to statements solicited by plaintiff's undercover investigators, holding that "[w]hen a plaintiff engages an agent whose mission is to induce defamatory statements, the plaintiff consents to any such resulting defamation." 1998 WL 259942, at *5.

OPPENHEIMER: 2534011 v01 10/02/2007

Here, the result must be the same. Plaintiff bases its claims on statements solicited by Plaintiff's "shoppers." Therefore, under *Fashion Boutique I* and well-settled law, Plaintiff consented to any resulting slander or defamation and cannot recover on such alleged slander or defamation. The Court must dismiss Plaintiff's slander claims because Plaintiff solicited and consented to all the alleged statements. *Id.*; *Park*, 139 A.D.2d at 962, 528 N.Y.S.2d at 250; *Teichner*, 7 A.D.2d at 251, 181 N.Y.S.2d at 846; *Wells*, 212 A.D. at 369, 208 N.Y.S. at 627-28.

      **B.**     **Even if Sleepy's Consent to Slander Were Not a Complete Defense, the Plaintiff Has Failed To Meet the Pleading Requirements in Defamation and Slander Actions.**

Plaintiff's slander claims fail because Plaintiff's Complaint fails to plead with the specificity required. Specifically, the Complaint fails to put Select Comfort on notice as to who, if anyone, heard the alleged slanderous statements other than Plaintiff's agents. Because Select Comfort will be unable to adequately defend the action without this information, the Complaint is deficient and the Court should dismiss the slander claims.

In order to successfully plead defamation or slander the Complaint must give Select Comfort "sufficient notice of the communications complained of to enable [Select Comfort] to defend [itself]." *Jones v. Capital Cities/ABC Inc.*, 874 F. Supp. 626, 628 (S.D.N.Y. 1995); *see also Burns v. Cook*, 458 F. Supp. 2d 29, 45 (N.D.N.Y. 2006). Despite the notice pleading requirements under the Federal Rules of Civil Procedure, in a defamation or slander action, the Plaintiff's Complaint must set forth: (1) what statements were made; (2) the individual making the statement; (3) the person or people hearing the statement; and (4) the time frame in which the statements were made. *Cannizzaro v. Bache, Halsey Stuart Shields, Inc., S.D.*, 81 F.R.D. 719, 722 (S.D.N.Y. 1979) (holding that defendants are entitled to know "what the statements were, *to whom they were made* as well as the general period of time during which they were made") (emphasis added); *see also Burns*, 458 F. Supp. 2d at 46.

OPPENHEIMER: 2534011 v01 10/02/2007

The Court and Select Comfort cannot look to the Complaint for the answers to these fundamental questions because the answers are not there.  Instead, the Complaint presents only generalized allegations of "other persons whose names are unknown" being present in a Select Comfort store at the time of the allegedly slanderous statements. (Compl. ¶¶ 53, 56, 59, 62.) The Complaint does not even allege that the supposedly present "other persons" were listening or heard the slanderous statements.  (*Id.*)  Nor does the Complaint attempt to classify the "other persons" as potential customers of Plaintiff.[10]  (*Id.*)  Select Comfort is unable to investigate the claims because they do not know who the "other persons" are.  Because the Complaint lacks this essential information, the Court must dismiss the slander claims.  *Burns*, 458 F. Supp. 2d at 46; *Cannizzaro,* 81 F.R.D. at 722.

## V.   PLAINTIFF'S CLAIM OF VIOLATION OF THE LANHAM ACT FAILS BECAUSE THE ALLEGED STATEMENTS DO NOT CONSTITUTE ADVERTISING OR PROMOTION UNDER THE LANHAM ACT, AND PLAINTIFF HAS, THEREFORE, FAILED TO STATE A CLAIM ON ITS EIGHTH CAUSE OF ACTION.

Plaintiff fails to state a claim under the Lanham Act.  Plaintiff's claim fails because Plaintiff alleges nothing more than isolated instances of Select Comfort employees' reactions to inquiries about the Plaintiff and other Retail Partners.  Such an allegation of isolated instances does not constitute "commercial advertising or promotion" as required under the Lanham Act, and Plaintiff cannot rely on its vague, conclusory allegations, unsupported by any specific factual allegations, of a corporate policy of defamatory comments to support a Lanham Act claim.

---

[10]   Importantly, Plaintiff would be unable to prove any damages if this action went further. Because Plaintiff has not alleged and does not know who heard the alleged slander, it cannot prove whether this influenced the buying decision of a potential customer.  In that sense, Plaintiff has also failed to plead a claim for damages.  In fact, the Complaint oddly assumes that persons at a Select Comfort retail store were considering buying products from Plaintiff and would have later gone to Plaintiff's store to purchase Select Comfort products.

OPPENHEIMER: 2534011 v01 10/02/2007

Plaintiff's factual allegations do not amount to a violation of the Lanham Act as a matter of law. "Although the Lanham Act encompasses more than the traditional advertising campaign, the language of the Act cannot be stretched so broadly as to encompass all commercial speech." *Fashion Boutique III*, 314 F.3d at 57. Plaintiff must allege more than mere isolated slanderous statements to fall under the Lanham Act. In fact, the Second Circuit Court of Appeals has held that

> the touchstone of whether a defendant's action may be considered "commercial advertising or promotion" under the Lanham Act is that the contested representations are part of an organized campaign to penetrate the relevant market. Proof of widespread dissemination within the relevant industry is a normal concomitant of meeting this requirement. Thus, businesses harmed by isolated disparaging statements do not have redress under the Lanham Act . . .

*Fashion Boutique III*, 314 F.3d at 57.

What constitutes an adequate allegation of dissemination "to constitute advertising and promotion [under the Lanham Act] will vary from industry to industry and from case to case." *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 942 F. Supp. 209, 216 (S.D.N.Y. 1996) ("*Fashion Boutique II*") (*citing Am. Needle & Novelty, Inc. v. Drew Pearson Mktg.*, 820 F. Supp. 1072, 1078 (N.D. Ill. 1993)). For example, in an industry with two or three potential customers, a slanderous letter sent to one customer may constitute "advertising and promotion," whereas in an industry with thousands of potential customers twenty-seven slanderous statements do not constitute "advertising and promotion." *Compare Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 734–35 (9th Cir. 1999) (one letter in market of two or three adequate to make claim under Lanham Act) *with Fashion Boutique III*, 314 F. Supp. at 58 (holding plaintiff's Lanham Act claim insufficient because the plaintiff's presenting "a total of twenty-seven oral statements regarding plaintiff's products in a marketplace of thousands of customers" did not constitute "commercial advertising or promotion under the Lanham Act.");

20

*see also Auto-Chlor Sys. Of Minn., Inc. v. JohnsonDiversey*, 328 F. Supp. 2d 980, 1019–20 (D.

Minn. 2004) (holding statements to three customers in market containing hundreds of customers

inadequate for Lanham Act claim); *Sports Unlimited v. Lankford Enters., Inc.*, 93 F. Supp. 2d

1164, 1169 (D. Kan. 2000) (dissemination of information to two customers where plaintiff made

up to 150 bids per year inadequate for Lanham Act claim); *Seven-Up Co. v. Coca-Cola Co.*, 86

F.3d 1379, 1386 (5th Cir. 1996) (communications to eleven out of seventy-four potential

customers was adequate to maintain Lanham Act claim).

      Here, Plaintiff failed to allege, and it is clear that Plaintiff will be unable to prove any set

of facts which would result in, a claim under the Lanham Act.   Throughout the Complaint,

Plaintiff identifies only twenty-two allegedly slanderous statements from "over 100 shops."

(Compl. ¶ 20.)   Out of those twenty-two statements, only twenty involved commentary about

Plaintiff's store.   Moreover, Plaintiff cannot identify any customers who heard the commentary.

      Furthermore, the market for beds and mattresses is enormous in Plaintiff's base of

operations the northeast United States.   (Compl. ¶ 1.) Statements to twenty of Plaintiff's agents

in a market containing millions of potential customers are simply inadequate to state a claim

under the Lanham Act as a matter of law.   *Fashion Boutique III*, 314 F.3d at 58 (twenty-seven

statements in market of thousands inadequate to make claim under Lanham Act).

      In addition, Plaintiff cannot simply rely on its assertion that a policy of disparagement

and defamation existed to get past a motion to dismiss.   Plaintiff must be able to allege and prove

facts.  Here Plaintiff cannot do so.  The Plaintiff merely alleges that

> Select Comfort's failure to take any action concerning the disparagement and
> defamation, its pervasiveness throughout the course of the relationship, and its use
> against other "Retail Partners" as well, indicated that the practice was, and is, an
> intentional policy and tactic of Select Comfort.

(Compl. ¶ 45.)

OPPENHEIMER: 2534011 v01 10/02/2007

These allegations do not support a finding or adequately allege a policy of disparagement and defamation. *See Fashion Boutique II*, 942 F. Supp. at 217 (holding that "the fact that a handful of employees made disparaging comments to a small fraction of the relevant purchasing public [is not] evidence of a policy to disparage the quality or authenticity of the merchandise sold by [plaintiff]."), *aff'd by Fashion Boutique III*, 314 F.3d 48.   Furthermore, Plaintiff's allegation that Select Comfort did nothing "concerning the disparagement" is contradictory to its own pleading.   In Exhibit D attached to the Complaint, Select Comfort's CEO assured Plaintiff that Select Comfort trains personnel not to disparage the Retail Partners.   Therefore, Plaintiff's claim that Select Comfort had a policy of disparagement is nothing more than a legal conclusion disguised as a factual allegation and cannot survive this motion to dismiss.[11]   *Papasan*, 478 U.S. at 286.

## CONCLUSION

The Court should dismiss this action in its entirety for reasons that apply across all counts and for reasons specific to individual counts.   Thus:

Count I (breach of contract) must be dismissed because the Complaint fails to identify a valid contract which was breached.    The Dealer Agreement expired by its terms on September 30, 2006, and all but one of the allegedly defamatory or slanderous statements occurred after that date.   Therefore, the allegedly defamatory or slanderous statements could not have breached the Dealer Agreement because the Dealer Agreement had expired.   The one statement that was alleged to have been made during the term of the Dealer Agreement is only

---

[11]   Importantly, even if Plaintiff could rely on this bald assertion, its claims would still fail for want of the alleged policy's impact on a substantial number of customers. *Fashion Boutique III*, 314 F.3d at 58 (leaving "open the possibility that a cause of action might exist where a defendant maintains a well-enforced policy to disparage its competitor each time it is mentioned by a customer, *if such a policy of reactive disparagement successfully reaches a substantial number of the competitor's potential customers*.") (emphasis added).

OPPENHEIMER: 2534011 v01 10/02/2007

alleged to have been made to Plaintiff's agent and cannot therefore support a claim for breach of the Dealer Agreement.

Counts II, III, IV, and V (slander per se) must be dismissed because the Complaint only alleges statements which were solicited by Plaintiff's agents during "shops" at Select Comfort. Because Plaintiff solicited the alleged slander, Plaintiff consented to any slander which occurred and statements made under those circumstances cannot give rise to a claim for slander.

Count VI (breach of the implied covenant of good faith and fair dealing) must be dismissed because the Dealer Agreement expired prior to any alleged defamatory or slanderous statements. Because there was no contract to support the implied covenant, Plaintiff cannot state a claim for a breach of the implied covenant.

Count VII (unfair competition) must be dismissed because the Complaint fails to identify any property right or benefit belonging to Plaintiff which Select Comfort's allegedly defamatory or slanderous statements damaged. Because the Dealer Agreement expired prior to any alleged defamation or slander, Plaintiff had no property right or benefit flowing from the Dealer Agreement and its unfair competition claim fails.

Count VIII (violation of the Lanham Act) must be dismissed because the Complaint fails to allege any "advertising or promotion" which violated the Lanham Act. The twenty statements identified in the Complaint in a market of millions of potential customers are insufficient to state a claim under the Lanham Act.

Count IX (contractual indemnification) must be dismissed because the indemnification clause in the Dealer Agreement does not apply to actions brought by Plaintiff against Select Comfort for alleged injuries to Plaintiff. Rather, the clause applies to claims by injured third parties against Plaintiff. Therefore, Plaintiff's claims against Select Comfort here do not fall

OPPENHEIMER: 2534011 v01 10/02/2007

within the contractual indemnification clause and the indemnification clause is inapplicable to the facts alleged.

Date:  New York, New York
      October 2, 2007

**OLSHAN GRUNDMAN FROME ROSENZWEIG & WOLOSKY LLP**

By: _Herbert C. Ross, Jr._
    Herbert C. Ross, Jr. (HR 8482)
Park Avenue Tower
65 East 55th Street
New York, New York 10022
Telephone: (212) 451-2300

Attorneys for Defendants Select Comfort Wholesale Corporation, Select Comfort Retail Corporation and Select Comfort Corporation

*Of Counsel for Defendants Select Comfort Wholesale Corporation, Select Comfort Retail Corporation and Select Comfort Corporation:*

**OPPENHEIMER WOLFF & DONNELLY LLP**
Michael J. Bleck   (MB 5278)
Heidi A.O. Fisher (HF 6782)
Dennis E. Hansen (DH 0353)
3300 Plaza VII Building
45 South Seventh Street
Minneapolis, Minnesota  55402
Telephone:  612.607.7000
Facsimile:   612.607.7100
E-Mail:  *mbleck@oppenheimer.com*
       *hfisher@oppeneheimer.com*
       *dhansen@oppenheimer.com*

OPPENHEIMER: 2534011 v01 10/02/2007