```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------x
SLEEPY'S, LLC,                             :
                                           :
                        Plaintiff,         :
                                           : **MEMORANDUM & ORDER**
              -against-                    : 07 CV 4018 (TCP) (ARL)
                                           :
SELECT COMFORT WHOLESALE CORPORATION,      :
SELECT COMFORT RETAIL CORPORATION and      :
SELECT COMFORT CORPORATION,                :
                                           :
                        Defendants.        :
------------------------------------------x
```

Stephen G. Crane, Special Master

The undersigned, having been appointed Special Master pursuant to Fed. R. Civ. P. 53(a)(1)(C) by order dated and filed January 10, 2012, of the Hon. Thomas C. Platt, United States District Judge, and having heard oral argument on January 24 and 30, 2012, hereby renders the following decision on the Defendants' Motion to Exclude Evidence of Secret Shops Because it is not Relevant to Plaintiff's Breach of Contract Claims.

For the following reasons the defendants' motion is **DENIED**.

The thrust of the defendants' argument on this motion is that, by reading §4(c) of the Retail Partner Agreement with §3(j), it is clear that they did not agree to avoid disparaging Sleepy's except in connection with Select Comfort's warranty service of Sleepy's customers. In particular, §3(j) is unilateral and protects only Select Comfort; and it was Sleepy's counsel who raised the insertion of non-disparagement and elected to place it in §4(c). The

1

contention, then, is that the plain language of the Agreement (<u>Eveleth Taconite Co. V Minnesota Power & Light Co.</u>, 301 Minn. 20, 24-25, 221 N.W.2d 157, 160 [1974]; <u>Employer's Liability Assurance Corp. v Morse</u>, 261 Minn. 259, 264, 111 N.W.2d 620, 624 [1961] ["The cardinal purpose of construing a contract is to ascertain the intention of the parties from the language used by them and by a construction of the entire instrument"]), contains no obligation of the defendants to abstain from disparaging the plaintiff in general. Therefore, the secret shops are irrelevant to a cause of action for breach of a non-existent contract obligation. Stated otherwise, they argue that the secret shops are irrelevant because none relates to warranty claims, the only provision in which a non-disparagement obligation rests on the defendants under §4(c).

The second prong of this motion concerns Select Comfort's obligation to "[p]rovide first quality merchandise to [plaintiff] meeting all mutually agreed upon specifications." §4(a). On this subject, the defendants argue that the secret shop evidence is irrelevant in determining "first quality." These shops only show that defendants' sales persons expressed their opinion which is inadequate to prove whether or not the beds supplied to the plaintiff met the "first quality" standard of §4(a). Proof of this standard can only be done by testing or the opinions of experts.

Finally, the fraudulent inducement claim suffers the same defect with respect to the "first quality" standard, according to the defendants, and they argue, as well, that the secret shops can

hardly establish what was in the minds of the defendants' negotiators of this Retail Partner Agreement two years before.

Opposing this motion, the plaintiff contends that it represents an attempt to relitigate the court's prior determination that the term "first quality" is ambiguous and must be determined by the fact-finder. It also claims that the argument of contract interpretation mis-defines the non-disparagement provision of §4(c).[1] Indeed, the plaintiff claims this contract construction theory is a new argument not raised earlier in this litigation. On the merits of the defendants' argument, the plaintiff claims that the evidence makes clear that this language was to be an unlimited, bi-lateral non-disparagement provision, and to limit it to the warranty context does not fit with the facts because the plaintiff provides no warranty services for Select Comfort beds, so there is no need to make the clause mutual if it were so limited.[2] The plaintiff refers

---

[1] The subparagraph reads: "Select Comfort will: ... (c) Provide warranty service in accordance with Select Comfort's published warranty for all products and components sold to [plaintiff] by Select Comfort; Each party represents that it shall not impair, infringe upon or adversely affect the character, reputation and good will (collectively, the 'Brand Image') of the other party;"

[2] The plaintiff grapples with the unilateral non-disparagement provision in §3(j). It reads: The plaintiff will "Not disparage Select Comfort or any products distributed through Select Comfort's retail stores or any of Select Comfort's other retail partners and not interfere with any of Select Comfort retail store's relationships with customers or potential customers;" The plaintiff contends (Opposition brief p.17-18) that "the existence of a one-way provision forbidding certain types of disparagement does not foreclose the possibility of a two-way non-disparagement provision with a somewhat different focus elsewhere

to further evidence that, when it discovered disparagement and asked the defendants to supply a letter that it would put an end to it, the defendants declined to supply it on the ground that it was unnecessary because the agreement already forbade disparagement by either party.

As to the "First Quality" issue, the plaintiff argues that the court on the defendants' summary judgment motion already ruled that §4(a) is ambiguous and that there are issues of fact about whether the defendants breached it. Because of this ambiguity, the plaintiff contends that the secret shops are relevant. If plaintiff's interpretation of "first quality" is correct that it means that the beds supplied to Sleepy's were of the same quality as Select Comfort's own line, then the shop report evidence will be relevant to whether this representation and warranty was breached. This evidence, says plaintiff, will demonstrate disparagement of the beds plaintiff sold in comparison to those sold in Select Comfort stores. "The logical and probable consequence of the disparagement campaign is to establish in consumers' minds that the Select Comfort beds at Select Comfort's retail stores are 'first quality' and the Select Comfort beds at Sleepy's are second rate. Consumer perception is reality." (Plaintiff's opposition brief, p.15).

Finally, the plaintiff acknowledges that "the relevance of the secret shop evidence to the fraudulent inducement claim may not be

---

in the agreement, or necessarily restrict the meaning of the two-way provision."

4

as direct as for other claims" (Opposition brief p.18) but argues it is relevant in showing that Select Comfort's representations during contract formation were false. "The disparagement campaign tends to show that these representations were false and that Select Comfort knew they were false when it made them. Documents show that around the time Select Comfort made its representations to Sleepy's it also recognized internally that the plastic foundations did give it a competitive advantage over the beds sold at Sleepy's. (duPont Aff 9/09 Exs. BBB, DDD, EEE.) That it knew of, and then exploited that competitive advantage to its benefit through the disparagement campaign (which the secret shop evidence shows) tends to make it more likely that Select Comfort knew the representations it made to Sleepy's were false at the time it made them." (Id. at 19).

In reply the defendants reiterate their interpretation of §4(c) defending its language and the placement of the non-disparagement clause favoring Sleepy's in the warranty provision. They further blunt the plaintiff's argument that "first quality" is ambiguous as a "tactic to avoid scrutinizing what evidence is relevant to determine" its meaning. The shop evidence, they say is merely the opinions of their sales people without personal knowledge of quality control processes. They take the plaintiff to task for saying "consumer perception is reality" because the statements of their employees were made to employees of the plaintiff and not to actual customers such that it is an "insurmountable inferential leap" to assume similar statements were made to actual customers. They also

argue that consumer perception has no bearing on whether the quality of goods sold to Sleepy's complied with the Agreement. Finally, the defendants note that the plaintiff fails to explain the relevance of shop evidence to the statements of defendants' executives during contract negotiations two years earlier. (Defendants' Reply, pp. 5-6). In oral argument they add that the plaintiff never objected to the quality of the beds it was receiving.

The defendants' argument about the plain meaning of the Agreement need not be addressed because it has already been decided by Judge Platt that "The Dealer Agreement included a mutual non-disparagement provision...." (Order denying defendants' motion for summary judgment dated May 2, 2011, p.2). Moreover, the defendants' contract interpretation argument and plain meaning contention is vulnerable. They nowhere consider the placement of the §4(c) provision as necessitated by the structure of section 3 and section 4. The former contains Sleepy's obligations. The latter separately contains Select Comfort's undertakings. Nor do the defendants address the practical construction their own executives gave to the Agreement when they refused as unnecessary to give a letter undertaking to stop the disparagement because the Agreement already so provided.

The defendants acknowledge that "first quality" is ambiguous, as Judge Platt held in his May 2, 2011, order (<u>id.</u> at p. 9). As he further wrote, there are questions of fact as to whether the

6

defendants breached it.[3] This holding also plays a role in the plaintiff's fraudulent inducement claim. As to this claim District Judge Platt pinpointed issues including: "1) was the wood construction inferior to the plastic construction; 2) did Defendants gain a competitive advantage due to the Dealer Agreement; 3) did those alleged statements actually induce Plaintiff into the agreement." Since the secret shops are relevant to at least the first pinpointed issue, the defendants' seductive and meritorious argument that disparagement two years later cannot logically prove their executives' allegedly fraudulent state of mind two year earlier cannot control the disposition of this branch of their motion.

The defendants have not persuaded that the secret shop evidence should be precluded in relation to any of the three branches of their motion. Accordingly, the motion is **DENIED**.

**SO ORDERED.**

Dated: March 2, 2012
      Central Islip, New York

*/s/ Stephen G. Crane*
Stephen G. Crane, Special Master

---

[3] There may be a troublesome gap, not relevant to this motion, in the plaintiff's case if it is pursuing the notion that "consumer perception is everything." That gap is that the plaintiff has no consumer as a witness (cf. Tolteec Fabrics, Inc. v August Incorporated, 29 F.3d 778, 784 (2d Cir.1994).