Herbert C. Ross, Jr. (HR 8482)
Olshan Grundman Frome Rosenzweig & Wolosky LLP
Park Avenue Tower
65 East 55th Street
New York, New York 10022
Telephone:  (212) 451-2300

Andrew S. Hansen  (AH 6788)
Heidi A.O. Fisher (HF 6782)
Joseph S. Miller (JM 8570)
Oppenheimer Wolff & Donnelly LLP
3300 Plaza VII Building
45 South Seventh Street
Minneapolis, Minnesota  55402
Telephone:     (612) 607-7000

*Attorneys for Defendants Select Comfort Wholesale Corporation,*
*Select Comfort Retail Corporation, and Select Comfort Corporation*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SLEEPY'S, LLC,<br><br>                              Plaintiff,<br><br>- against -<br><br>SELECT COMFORT WHOLESALE CORPORATION, SELECT COMFORT RETAIL CORPORATION and SELECT COMFORT CORPORATION,<br><br>                              Defendants. | Civil Action No.<br><br>07 CV 4018 (Platt, J.)(Lindsay M.J.)<br><br>**DEFENDANT'S DAUBERT MOTION SUBMISSION PURSUANT TO THE COURT'S FEBRUARY 27, 2012 ORDER** |

      The Special Master's February 10, 2012 ruling on Defendant's Renewed Motion to Exclude Plaintiff's Expert Testimony should be adopted.  While the Special Master left the basis of Dr. Wilner's proposed testimony and causation for trial, he correctly ruled that Dr. Wilner could not testify about damages arising from proposed fictional and speculative future contracts between the parties.

1

As an initial matter, the Special Master also correctly ruled that Dr. Wilner should not be allowed to testify if Plaintiff fails to establish causation, as occurred in *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 75 F. Supp. 2d 235 (S.D.N.Y. 1999). A particularly relevant point from *Fashion Boutique,* which was upheld by the Second Circuit, is that the plaintiff could not use secret shops conducted by its own employees and agents to establish causation or support its claims. *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 75 F. Supp. 2d at 238, *aff'd* 314 F.3d 48 (2d Cir. 2002). Here, Plaintiff should be held to the same standard. The only reason the *Fashion Boutique* case proceeded to trial was because actual customers testified that they heard disparaging comments. *Id.* at 241. The *Fashion Boutique* court did not allow testimony regarding secret shops—a step that this Court has not yet taken. Of course, following the lead of the Southern District and Second Circuit from *Fashion Boutique* is not only the correct decision, but would also significantly shorten and simplify this trial.

All of Plaintiff's damages are for lost profits for the period of time of the parties' relationship and for a hypothetical future four-year period where the parties *could* have, but did not, work together. Lost profit damages are extremely difficult to prove and are subject to a "demanding" high standard. *Schonfeld v. Hillard,* 218 F.3d 164, 172 (2d Cir. 2000) (*citing Kenford Co. v. Eric Cty.,* 493 N.E.2d 234, 235 (N.Y. 1986)); *Healy v. Carlson Travel Network Assoc.,* 227 F. Supp. 2d 1080, 1088 (D. Minn. 2002). This short-lived relationship, described by both parties as a "test" and an "experiment" is subject to an even higher standard. "[E]vidence of lost profits from a new business venture receives greater scrutiny because there is no track record on which to base an

estimate." *Schonfeld*, 218 F. Supp. 3d at 172.  Minnesota law goes even further—and all of the contract claims are governed by Minnesota law.  "[O]rdinarily, proof of lost profits in a new business venture is too speculative to be the basis for recovery." *Healy,* 227 F. Supp. 2d 1080, 1088 (D. Minn. 2002) (quoting *Leoni v. Bemis Co.,* 255 N.W. 2d 824, 826 (Minn. 1977)).

The Special Master correctly ruled that Plaintiff cannot present lost profit damages based upon speculative future contracts between the parties.  This is not a controversial issue as no jurisdiction or court in the country allows such damages.  For example, the Special Master correctly held that in *Porous Media Corp. v. Midland Brake, Inc.,* 220 F.3d 954 (8th Cir. 2000), the Eighth Circuit reversed the District Court for allowing lost profit damages beyond the term of the parties' contract.  *Id.* at 962.  The parties only assumed risk for the life of the contract's "five year period—no more."  *Id.*  In *Meterlogic, Inc. v. KLT, Inc.,* 368 F.3d 1017, 1019 (8th Cir. 2004), also relied on by the Special Master, the Eighth Circuit easily rejected similar proposed testimony where the Plaintiff's expert predicted damages for years beyond the expiration of the parties' contract.

Here, the parties had one contract, covering a short term from June 2005 through September 2006 (15 months).  All of Plaintiff's damages are lost profit damages based upon how many beds it believes it should have sold.  It is long established law in both New York and Minnesota that such damages are restricted to the period of the term of the parties' contract — regardless of the legal theory.  *In re: Petroleum Carriers Co.,* 121 F. Supp. 520, 527 (D. Minn. 1954); *Meterlogic, Inc. v. KLT, Inc.,* 368 F.3d 1017, 1019 (8th

3

Cir. 2004); *Trademark Research Corp. v. Maxwell Online, Inc.,* 995 F.2d 336, 333 (2nd Cir. 1993); *Robotic Vision Sys. v. Cybo Sys. Inc.,* 17 F. Supp. 2d 151, 160-161 (E.D.N.Y. 1998).

Here, the contract terminated on September 30, 2006. The Special Master ruled that based upon the Court's Memorandum and Order of May 2, 2011 that the Court held a fact issue as to whether the contract was extended into early 2007. The Special Master then held, in accordance with well-established law, that Plaintiffs cannot obtain lost profit damages beyond the term of the parties' contract, either September 30, 2006 or some date a few months later if the evidence established that the contract was extended. Plaintiff, however, seeks damages for a much greater period from 2007 through 2010.

To obtain lost profit damages beyond the contract period requires this Court to ignore basic contract and damages law. As an example, suppose A and B have a contract whereby A is to sell widgets to B for $10 each for one year. If A breaches, B can sue for his lost profits during that one year. B cannot, however, recover future lost damages based upon an assumption that the parties would have entered subsequent contracts and that B is also entitled to lost profits under such assumed contracts.

This is such an obvious and fundamental principle that it is rarely litigated, instead most often arising when courts further restrict lost profit damages in instances where a contract has a termination with notice clause—which further limits the amount of time for which lost profit damages can be sought. *See e.g. W. Oil & Fuel Co. v. Kemp,* 245 F.2d 633, 641 (8th Cir. 1957) (limiting lost profit damages to the notice period in a contract because that is the only period of time in which plaintiff was assured

performance). Here, the parties' contract also contained a provision allowing Select Comfort to terminate for any reason upon 30 days' notice. Plaintiff's theory ignores this provision and assumes that the parties would have entered contracts for 2007, 2008, 2009, and 2010, and that those contracts would have contained different terms. The Special Master properly rejected pursuit of such egregiously speculative damages.

Plaintiff half-heartedly tried to avoid this reality by arguing that its claims are not just contract claims. That may be, but it is undisputed that all of its damages for "lost profits" are based upon the parties being in and continuing a business relationship where Plaintiff sold Defendant's beds. Dr. Wilner does not testify about any separate tort damages, but instead bases his entire analysis of damages on Plaintiff remaining in a contractual relationship with Defendant. The Special Master correctly ruled that when the damages sought are for lost profits, they cannot extend beyond the term of the contract. That is because without such a contract in place, Plaintiff would have no right to sell Defendant's beds and thus there could be no "lost profits" under any legal theory.

Plaintiff could find no cases supporting its position, instead citing several plainly inapplicable decisions that the Special Master rejected. For example, Plaintiff cites *S&K Sales Co. v. Nike, Inc.*, 816 F.2d 843, 844 (2d Cir. 1987), but it is a vastly different type of case involving claims of tortious breach of fiduciary duty. In that case, Nike knowingly conspired with the plaintiff's employee to terminate the contract and move Nike's business away from the plaintiff and to the employee. *Id.* at 845–47. If that case had been about Nike breaching the contract between it and plaintiff, as is the case here, future lost profit damages would not be allowed. *See Atlas Copco Tools, Inc. v. Air*

*Power Tool & Hoist, Inc.*, 131 S.W.3d 203, 208 (Tex. Ct. App. 2004). Moreover, even if tortious interference claims were present here, it would not be enough to get future profit damages under Minnesota law. *See W. Oil*, 245 F.2d at 643–44.

Plaintiff's additional cases also miss the mark. The only Minnesota case Plaintiff cites, *Holb-Gunther, LLC v. Van-Tech Corp.*, No. A08-1827, 2009 WL 2746176 (Minn. Ct. App. 2009), does not involve any claims for future lost profits beyond the term of the parties' contract. The case is not relevant. *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Corp.*, 65 F.3d 1113, 1124 (4th Cir. 1995) involved lost future profits for a claim of tortious interference with prospective contractual relationships, a claim not present here. *Sons of Thunder, Inc. v. Borden, Inc.*, 690 A.2d 575 (N.J. 1997) actually follows the principle that a plaintiff can only collect lost profit damages for the period of the contract. The court noted that plaintiff can only raise damages to put it in "'as good a position as if the other party had fully performed.'" *Id.* at 589–590 (citation omitted). *River W. Meeting Assocs., Inc. v. Avaya, Inc.*, No. 03 C 1023, 2004 WL 422683 (N.D. Ill. Mar. 4, 2004) involved a Rule 12 motion and pleading in the alternative. The Court held that plaintiff could only recover damages to put it in "'as good a position as if the other party had fully performed'" the parties' contract. *Id.* at *4 (citation omitted). "Obviously, if any claims to damages exceed this threshold, they will not be awarded." *Id.*

As noted above and in Defendant's earlier briefs, limiting lost profit damages to the term of the contract is a well-established principle. For example, in *Children's Broad. Corp. v. Walt Disney Co.*, 245 F.3d 1008, 1019 (8th Cir. 2001), the Eighth

6

Circuit, applying Minnesota law, upheld the trial court's vacating of a jury award, holding that the Plaintiff's expert improperly proposed contract damages that extended beyond the assured length of the parties' contract. In *Raygo, Inc. v. Cradle Equip., Inc.*, 339 N.Y.S.2d 120, 123 (N.Y. App. Div. 1972), a case applying Minnesota law, the trial court was reversed because it did not limit contract damages to the period that the agreement was assured of life.

Finally, in *Atlas Copco Tools*, 131 S.W.3d 203 (Tex. Ct. App. 2004), the plaintiff also tried to rely on tortious interference cases to justify damages beyond the term of the contract. The court rejected that approach and rejected Plaintiff's expert's theory that damages could extend beyond the term of the contract. *Id.* at 208. The case involved, like this case, a plaintiff that sold defendant's products pursuant to a contract. *Id.* at 206–207. The contract was for a one-year term, would automatically renew for an additional one-year term, and could be terminated on 60 days' notice. *Id.* at 207. The Texas Court of Appeals reversed the trial court jury verdict and held that plaintiff's expert's testimony was too speculative because she improperly extended damages beyond the contract's 60-day notice period and its one-year term. *Id.* at 208.

Eliminating Plaintiff's preposterous "future" lost profit damages is not only legally necessary, but also fundamentally fair. Select Comfort should not have to prepare for and defend claims involving hundreds of millions of dollars in damages that have been universally rejected. This will also help streamline the trial, reduce the burden on Select Comfort and the Court, and, of course, is correct under the law.

As noted above, Plaintiff also fails to establish causation, which is fatal to its claims at trial and will require Dr. Wilner's testimony to be excluded. Finally, as noted in Defendant's earlier briefs, Dr. Wilner bases his entire lost profit theory on unsupported grounds. He fails to analyze how Plaintiff was like Select Comfort's other Retail Partners or if Plaintiff could have achieved similar levels of sales. For all these reasons, Dr. Wilner's testimony should be excluded. At a minimum, the Court should approve the Special Master's decision precluding Plaintiff from pursuing lost profit damages based upon alleged, speculative future contracts. That is the only correct decision under the long-established law.

For the Court's reference, Defendant's previous briefing on these issues may be found at:

- Docket Number 103
- Docket Number 295
- Docket Number 563
- Docket Number 637

Date: March 2, 2012    **OPPENHEIMER WOLFF & DONNELLY LLP**

By: _s/ Andrew S. Hansen_
    Andrew S. Hansen (AH 6788)

Andrew S. Hansen  (AH 6788)
Heidi A.O. Fisher (HF 6782)
Joseph S. Miller (JM 8570)
3300 Plaza VII Building
45 South Seventh Street
Minneapolis, Minnesota  55402
Telephone: (612) 607-7000
Facsimile:  (612) 607-7100
E-Mail:  *ahansen@oppenheimer.com*
    *hfisher@oppeneheimer.com*
    *jmiller@oppenheimer.com*

**OLSHAN GRUNDMAN FROME
ROSENZWEIG & WOLOSKY LLP**
Herbert C. Ross, Jr. (HR 8482)
Park Avenue Tower
65 East 55th Street
New York, New York 10022
Telephone: (212) 451-2300

*Attorneys for Defendants Defendant Wholesale Corporation, Defendant Retail Corporation, and Defendant Corporation*

9

2926677  v.4