Andrew S. Hansen (AH 6788)
Heidi A.O. Fisher (HF 6782)
Oppenheimer Wolff & Donnelly LLP
Campbell Mithun Tower – Suite 2000
222 South Ninth Street
Minneapolis, Minnesota 55402
Telephone: (612) 607-7000

*Attorneys for Defendants Select Comfort Wholesale Corporation,
Select Comfort Retail Corporation, and Select Comfort Corporation*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SLEEPY'S, LLC,<br><br>       Plaintiff,<br><br>   - against -<br><br>SELECT COMFORT WHOLESALE CORPORATION, SELECT COMFORT RETAIL CORPORATION and SELECT COMFORT CORPORATION,<br><br>       Defendants. | Civil Action No.<br><br>07 CV 4018 (Seybert, J.)<br><br><br>**DEFENDANTS' TRIAL MEMORANDUM OF LAW IN SUPPORT OF THEIR OBJECTION TO THE TESTIMONY OF BENJAMIN J. WILNER** |

## **TABLE OF CONTENTS**

PAGE

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND ............................................................................................................................2

I. DESPITE REPEATED WARNINGS, SLEEPY'S NEVER SOUGHT TO PUT ITS RELEVANT STORES' FINANCIAL PERFORMANCE INTO EVIDENCE................................................................................................................2

ARGUMENT...................................................................................................................................4

I. FEDERAL RULES OF EVIDENCE 702 AND 703 REQUIRE EXPERT TESTIMONY BE BASED ON A RELIABLE FOUNDATION. ......................................4

II. DR. WILNER'S DAMAGES TESTIMONY MUST BE EXCLUDED BECAUSE IT IS NOT GROUNDED ON SUFFICIENT FACTS OR DATA. ....................................5

CONCLUSION...............................................................................................................................9

## **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Amorgianos v. National Railroad Passenger Corp.*,
   303 F.3d 256 (2d Cir. 2002)...................................................................................5

*Braun Corp. v. Vantage Mobility International, LLC*,
   2010 WL 5287484 (N.D. Ind. 2010).......................................................................8

*Crowley v. Chait*,
   322 F. Supp. 2d 530 (D.N.J. 2004) .........................................................................8

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
   509 U.S. 579 (1993)............................................................................................5, 6

*Ellipsis, Inc. v. The Color Works, Inc.*,
   428 F. Supp. 2d 752 (W.D. Tenn. 2006).................................................................6

*Fail-Safe, L.L.C. v. A.O. Smith Corp.*,
   744 F. Supp. 2d 870 (E.D. Wisc. 2010)..............................................................7, 8

*Lyman v. St. Jude Medical S.C., Inc.*,
   580 F. Supp. 2d 719 (E.D. Wis. 2008)....................................................................6

*Montgomery County v. MicroVote Corp.*,
   320 F. 3d 440 (3rd Cir. 2003) .................................................................................8

*Sorto-Romero v. Delta International Machinery Corp.*,
   2007 WL 2816191 (E.D.N.Y. 2007).......................................................................5

*State Farm Fire & Casualty Co. v. Electrolux Home Products, Inc.*,
   980 F. Supp. 2d 1031 (N.D. Ind. 2013) ...............................................................6, 7

*United States v. Williams*,
   506 F.3d 151 (2007)................................................................................................6

**OTHER AUTHORITIES**

Federal Rule of Evidence 702...................................................................................4, 5

## PRELIMINARY STATEMENT

Defendants Select Comfort Wholesale Corporation, Select Comfort Retail Corporation, and Select Comfort Corporation (collectively "Select Comfort") submit this memorandum of law in support of their objection to the trial testimony of Plaintiff Sleepy's, LLC ("Sleepy's") designated damages expert, Benjamin J. Wilner. Sleepy's has been acutely aware of this foundational problem that haunts Dr. Wilner's opinions regarding Sleepy's purported damages. During trial in 2012, Select Comfort objected to Sleepy's admission of Dr. Wilner's opinions on the grounds that they are unreliable (thus irrelevant) to the issue of damages because Sleepy's failed to enter into evidence the underlying basis for his opinion. Now that Dr. Wilner has testified in full, it is clear that the financial information upon which he relies is unreliable and his testimony should therefore not be considered by the Court.[1]

Sleepy's damage theory is predicated on sales of its Sleepy's stores being percentage points higher but for alleged conduct by Select Comfort. To do the math on this theory, however, Dr. Wilner first needed to know the sales, revenues, costs and profits at the relevant Sleepy's stores. But that information was never produced by Sleepy's during fact discovery, was not contained on its trial exhibit list, nor was it introduced, authenticated or admitted at trial by any witness. It was never subject to cross examination by Select Comfort. Dr. Wilner testified that he obtained this financial information not from Sleepy's financial department, but from three persons (who did not testify) in Sleepy's IT department. (Benjamin Wilner Trial Tr. 113:9-17, July 21, 2015.) Dr. Wilner never even talked to anyone in Sleepy's financial department about the data, never had it authenticated or took any steps to authenticate it. Indeed, neither Dr.

---

[1] Select Comfort has also submitted in its Defendants' Proposed Findings of Fact and Conclusions of Law arguments as to other reasons why Dr. Wilner's opinion is speculative and unreliable including his and Sleepy's failure to establish materiality or causation.

Wilner, nor Select Comfort or the Court, has any testimony that the underlying data used by Dr. Wilner is accurate. Select Comfort's expert, Dr. Steven Schwartz, testified how to an economist it is critical to establish the accuracy of the underlying data, and if it is not so established, it should not be relied upon.

> So if you are talking about sales data, you need a thorough understanding of how the data gets from the invoices in the store and how they are built up to the records they have here. You need to have an understanding of the processes in place to ensure accuracy. You need to have some sense of how often, or how frequently, or what's the size of the magnitude of restatements that are done when things get corrected. You need to know that error rate. If you don't know any of that, then you don't really have anything that you can rely on.

(Steven Schwartz Trial Tr. 161:22–162:13, July 22, 2015.)

In failing to demonstrate the data is reliable, Sleepy's has undercut the reliability of every calculation derived therefrom. Having failed to establish that Dr. Wilner's opinions have a reliable foundation and having exhausted all its second chances, the inevitable day has arrived— the expert testimony of Dr. Wilner should be excluded and not considered by the Court.

## **BACKGROUND**

**I.   DESPITE REPEATED WARNINGS, SLEEPY'S NEVER SOUGHT TO PUT ITS RELEVANT STORES' FINANCIAL PERFORMANCE INTO EVIDENCE.**

At trial, after submitting all of its fact witnesses, Sleepy's proffered Dr. Wilner as an expert qualified to testify as to Sleepy's alleged damages. (Trial Tr. 3055.) The Court halted Sleepy's questioning and discussed the process by which Sleepy's must submit testimony. (Trial Tr. 3055–3061.) The Court explained to Sleepy's counsel that submitting Dr. Wilner to testify based on evidence that had not been submitted into evidence would have entitled Select Comfort to object. (Trial Tr. 3060.) In light of the Court's warning of the inadequacy of its factual foundation, Sleepy's requested the Court permit Sleepy's to delay proceeding with Dr. Wilner's testimony that day and to allow Sleepy's additional time to submit all of its factual testimony.

(Trial Tr. 3070.)  Sleepy's proposed that after it had "finished" its case, it would only then offer Dr. Wilner's testimony. (Trial Tr. 3070. )

After having several weeks to comb through and analyze the testimony and documents presented in its case-in-chief, the parties reconvened before the Court.  (Trial Tr. 3205.) Sleepy's again proceeded to recall Dr. Wilner. (Trial Tr. 3205.)  Select Comfort requested that Sleepy's confirm that Sleepy's was done with the fact portion of its case, and Sleepy's unequivocally confirmed that it was done. (Trial Tr. 3205–06.)  Aware that Sleepy's additional proffer of evidence was insufficient to support Dr. Wilner's forthcoming expert testimony, Select Comfort previewed its specific objections for the Court, stating Select Comfort would object to any testimony submitted by Dr. Wilner that lacked the factual foundation.  (Trial Tr. 3211.) Despite Select Comfort's forewarning, Sleepy's waived the right to call additional fact witnesses and proceeded to question Dr. Wilner's testimony.  (Trial Tr. 212.)

Early in Dr. Wilner's testimony, Sleepy's attempted to solicit testimony from Dr. Wilner regarding the Sleepy's sales information—to which Select Comfort promptly objected on the ground that there was no factual basis for it. (Trial Tr. 3238–39.)  Select Comfort's objections to admission of Dr. Wilner's testimony were well taken.  Sleepy's once again requested to the Court that Sleepy's be allowed to supplement the facts portion of its case.  After a lengthy in-court exchange, the parties submitted briefs on the issue of whether Sleepy's could present additional fact witnesses.  The Court issued an Order precluding Sleepy's from bringing in any new evidence or any new witnesses. (Dkt. 797.)  Shortly thereafter, the Court granted Select Comfort judgment on partial findings, but it did not rule on the foundation issues regarding Dr. Wilner's testimony.

3

After portions of the Court's Order were reversed and remanded on appeal by the Second Circuit, the parties submitted their remaining evidence. Despite Select Comfort's asserted objection, Sleepy's again did not seek to put its purported financial information into evidence. Instead, Sleepy's recalled Dr. Wilner. On cross-examination by Select Comfort, Dr. Wilner testified that he received a number of data sets from persons in the IT Department. (Benjamin Wilner Trial Tr. 113:14–17, July 21, 2015.) When questioned regarding his knowledge of this data, Dr. Wilner testified that Sleepy's is not a publicly traded company (thus not subject to any standardized accounting practices) (Benjamin Wilner Trial Tr. 113:18-21, July 21, 2015), Dr. Wilner did not audit or verify the Sleepy's financial information (Benjamin Wilner Trial. Tr. 113:22, July 21, 2015), nor did Dr. Wilner speak with any individuals who had performed any such audit or verification (Benjamin Wilner Trial Tr. 113:3–114:6, 116:7–19, July 21, 2015). Dr. Wilner testified that his damages are dependent on the underlying data being accurate (Benjamin Wilner Trial Tr. 114:3-14; July 21, 2015), but no witness has ever even attempted to certify its accuracy or admit the information into evidence.

## ARGUMENT

**I. FEDERAL RULES OF EVIDENCE 702 AND 703 REQUIRE EXPERT TESTIMONY BE BASED ON A RELIABLE FOUNDATION.**

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which provides that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. In *Amorgianos v. National Railroad Passenger Corporation*, the Second Circuit recognized that the U.S. Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.* "has made clear that the district court has a 'gatekeeping' function under Rule 702—it is charged with 'the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Amorgianos v. Nat'l Railroad Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002) (quoting *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 597 (1993)). "The proponent of expert testimony must establish its admissibility by a preponderance of the evidence." *Sorto-Romero v. Delta Int'l Mach. Corp.*, No. 05-CV-5172, 2007 WL 2816191, at *4 (E.D.N.Y. Sept. 24, 2007).

Even if the proffered opinions satisfy the relevance threshold, they still must rest on a sufficiently "reliable foundation" to be admissible. *Daubert*, 509 U.S. at 597; *see Amorgianos*, 303 F.3d at 265; *Campbell*, 239 F.3d at 184. In this second portion of the inquiry, the Court "should consider the indicia of reliability identified in Rule 702, namely, (1) *that the testimony is grounded on sufficient facts or data*; (2) that the testimony 'is the product of reliable principles and methods'; and (3) that 'the witness has applied the principles and methods reliably to the facts of the case.'" *Amorgianos*, 303 F.3d at 265 (quoting Fed. R. Evid. 702) (emphasis added).

II. **DR. WILNER'S DAMAGES TESTIMONY MUST BE EXCLUDED BECAUSE IT IS NOT GROUNDED ON SUFFICIENT FACTS OR DATA.**

As "gatekeeper" under *Daubert*, the Court is required to analyze the above factors to examine whether proffered expert testimony "has a sufficiently 'reliable foundation' to permit it to be considered." *Amorgianos*, 303 F.3d at 265 (quoting *Daubert*, 509 U.S. at 597).

Dr. Wilner's expert testimony is based on sales data that Sleepy's failed to produce during fact discovery notwithstanding a request encompassing the information, never identified on its trial exhibit list, never admitted or sought to be admitted into evidence at trial, and failed to

5

authenticate. Federal Rule of Evidence 703 does not apply to Dr. Wilner's reliance on Sleepy's unsubstantiated data. Rule 703 Provides:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

Fed. R. Evid. 703. The party seeking to use an expert has the burden of showing by a preponderance of the evidence that the inadmissible statements are reasonably relied upon by experts in the field. *Daubert*, 509 U.S. at 592; Fed. R. Evid. 104(a); *see United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007). Even if the facts and data are those reasonably relied upon by experts in the field, underlying data lacking in probative force and reliability must be excluded. *Ellipsis, Inc. v. The Color Works, Inc.*, 428 F. Supp. 2d 752, 760 (W.D. Tenn. 2006). Here, if Sleepy's had properly disclosed its sales data and introduced it at trial, subject to cross examination, and it had been admitted, Dr. Wilner could properly rely upon it. However, that is not what happened, despite repeated warnings to Sleepy's. Indeed, Select Comfort was, at minimum, entitled to test the data on cross examination, which it did not get an opportunity to accomplish.

"[W]hen an expert relies upon information given to him by a party or counsel, he must independently verify that information before utilizing it in his calculations." *State Farm Fire & Cas. Co. v. Electrolux Home Products, Inc.*, 980 F. Supp. 2d 1031, 1048 (N.D. Ind. 2013) (citation omitted); *see Lyman v. St. Jude Med. S.C., Inc.*, 580 F. Supp. 2d 719, 726 (E.D. Wis. 2008) (excluding expert testimony where expert failed to verify the reliability of data given to him by counsel). For example, in *State Farm Fire & Casualty Co.*, the Defendant proffered a qualified expert to render statistical opinions regarding a comparative analysis of the risk of fire

involving Defendant's dryers and dryers in general. 980 F. Supp. 2d at 1047. As part of her analysis, Defendant's expert used data that was provided to her by the Defendant. *Id.* at 1048. The Court determined that while information derived from a national report fell in the gambit of Rule 703, data provided to the expert by Defendant did not. *Id.* "[W]hen an expert bases [his] opinion on information supplied by another, *particularly a party*, the Court must focus on the reliability of the expert's foundation." *Id.* at 1049 (citation omitted) (emphasis added). Defendant's expert admitted she did not investigate "how the data was compiled" or "independently verify the reliability of this information before she used it in her calculations." *Id.* The Court held that this "fatal flaw," among others, "render[ed] her statistical analysis unreliable and justifies excluding the opinions that rely on this information." *Id.* (citing *Fail-Safe, L.L.C. v. A.O. Smith Corp.*, 744 F. Supp. 2d 870, 888 (E.D. Wis. 2010) (reliance by expert solely on data provided by client rendered expert's testimony unreliable)).

  Sleepy's failure to disclose and authenticate its sales information has pervaded this case and trial. First, Sleepy's failed to produce its sales information during fact discovery. Sleepy's did not include this data on its trial exhibit list. Sleepy's did not seek to admit this data into evidence at trial. Indeed, Sleepy's had dozens of witnesses testify, but not a single one authenticated the sales data or even discussed it. Aside from Dr. Wilner's cursory statement that he "worked with people in Sleepy's IT" to obtain the information which he relies upon, Dr. Wilner could proffer no direct testimony regarding the reliability of the Sleepy's financial information. Rather, Dr. Wilner admits he did nothing himself to independently verify or authenticate the reliability of the Sleepy's data, nor did he talk to anyone who had authenticated the data. (Benjamin Wilner Trial Tr. 113, 115:7–16, July 21, 2015.) Dr. Wilner testified that Sleepy's is a private company, thus is not subject to standardized accounting practices or

7

required to submit public filings. (Benjamin Wilner Trial Tr. 113, July 21, 2015.) Dr. Wilner testified that he did not audit the sales records and did not analyze whether Sleepy's follows general accounting standards. (Benjamin Wilner Trial Tr. 8, 34, 113, July 21, 2015.) Nor did anyone from Sleepy's so testify.

It is well-established under Rule 703 that expert testimony that derives solely from information provided to an expert by the party that retained him, without independent verification, should be excluded. *Montgomery County v. MicroVote Corp.*, 320 F.3d 440, 448–49 (3d Cir. 2003); *Fail-Safe, L.L.C.*, 744 F. Supp. 2d at 888; *Crowley v. Chait*, 322 F. Supp. 2d 530, 547 (D.N.J. 2004); *Braun Corp. v. Vantage Mobility Int'l, LLC*, No. 2:06-CV-50-JVB-PRC, 2010 WL 5287484, at *7 (N.D. Ind. June 21, 2010). The dangers of blindly relying upon data from a party are particularly acute here because Sleepy's claimed damages are heightened if the sales data provided by Sleepy's to Dr. Wilner is more favorable to Sleepy's. Additionally, by Dr. Wilner only speaking with people in IT and not the financial department, and having no witness authenticate the data, Dr. Wilner, Select Comfort and the Court have no way of knowing if the correct sales, cost and profit data was used by Dr. Wilner in his damage calculation.

Expert testimony is admissible only if "it rests on a reliable foundation." *Daubert*, 509 U.S. at 597. It is evident from Dr. Wilner's testimony that Sleepy's sales data, which forms the basis of his damage model, is not reliable. It would be substantially unfair and unduly prejudicial to Select Comfort to consider Dr. Wilner's testimony when its basis has never been the subject of any testing in discovery or trial through cross examination. Moreover, Sleepy's has never offered to testify that Dr. Wilner did in fact use the correct information and that it was accurate. Having never resolved the critical flaws with the factual foundation of its case, Select

Comfort respectfully submits that Dr. Wilner's testimony, based on unverified data provided to him by Sleepy's, is not admissible under the Federal Rules of Evidence.

## CONCLUSION

Based on all of the foregoing reasons, Select Comfort respectfully requests that the Court sustain its objection to Dr. Wilner's testimony.

Date: August 21, 2015          **OPPENHEIMER WOLFF & DONNELLY LLP**

By: s/ Andrew S. Hansen
    Andrew S. Hansen (AH 6788)
    Heidi A.O. Fisher (HF 6782)
Oppenheimer Wolff & Donnelly LLP
Campbell Mithun Tower – Suite 2000
222 South Ninth Street
Minneapolis, Minnesota 55402
Telephone: (612) 607-7000
Facsimile: (612) 607-7100
E-Mail: *ahansen@oppenheimer.com*
      *hfisher@oppeneheimer.com*