```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
SLEEPY'S LLC,

                    Plaintiff,
                                           MEMORANDUM & ORDER
          -against-                        07-CV-4018(JS)(ARL)

SELECT COMFORT WHOLESALE
CORPORATION, SELECT COMFORT
RETAIL CORPORATION, and
SELECT COMFORT CORPORATION,

                    Defendants.
----------------------------------X
APPEARANCES
For Plaintiff:      Andrew W. Singer, Esq.
                    David J. Kanfer, Esq.
                    Lewis Donald Prutzman, Esq.
                    Paul D. Sarkozi, Esq.
                    Vincent J. Syracuse, Esq.
                    George Foulke Du Pont, Esq.
                    Stefanie Marie Ramirez, Esq.
                    Tannenbaum Halpern Syracuse & Hirschtritt LLP
                    900 Third Avenue
                    New York, NY 10022

For Defendants:     Heidi A.O. Fisher, Esq.
                    Joseph S. Miller, Esq.
                    Michael J. Bleck, Esq.
                    Michael K. Gravink, Esq.
                    Andrew S. Hansen, Esq.
                    Michelle R. Schjodt, Esq.
                    Fox Rothschild LLP
                    Campbell Mithun Tower
                    222 S. Ninth St.
                    Minneapolis, MN 55402

                    Joseph S. Androphy, Esq.
                    Michael Faillace & Associates, P.C.
                    60 East 42nd Street, Suite 2540
                    New York, NY 10165
```

SEYBERT, District Judge:

This action arises out of a sales agreement between Plaintiff Sleepy's LLC and Defendant Select Comfort[1], which made Plaintiff an authorized retailer of Defendant's Sleep Number beds. On October 22, 2015, the Court entered judgment in favor of Defendant. (Docket Entry 861.) Defendant now moves for its attorney's fees incurred in defending Plaintiff's claims under the Lanham Act's attorney's fees provision, 15 U.S.C. § 1117(a). (Docket Entry 862.) For the reasons that follow, Defendant's motion for attorney's fees is GRANTED.

BACKGROUND[2]

The Court assumes familiarity with the background of the case, which is chronicled in its earlier Orders. (See, e.g., Docket Entries 825, 859.) The salient details are discussed below.

I. Factual Background

Sleepy's, a New York-based retailer, sells mattresses and other bedding products. (Tr. 74:19-79:8.)[3] Select Comfort

---

[1] The Court will refer to defendants Select Comfort Wholesale Corporation, Select Comfort Retail Corporation, and Select Comfort Corporation collectively as "Select Comfort."

[2] These facts are drawn from the witness testimony at trial ("Tr.") and the parties' trial exhibits, which are labeled "PX" for Plaintiff's exhibits and "DX" for Defendant's.

[3] The following is the list of docket entry ("D.E.") numbers for the transcripts that are cited to throughout this Order: 3/21/12 pp. 1-124 D.E. 835; 3/22/12 pp. 126-250 D.E. 836; 3/23/12 pp. 251-309 D.E. 837; 3/26/12 pp. 310-418 D.E. 838; 3/27/12 pp. 419-556

manufactures and sells the Sleep Number bed, which contains an inflatable air chamber to adjust the firmness for the user. (Tr. 2250:8-2251:4, 2780:10-2782:15.)

In about 2000-2001, Select Comfort began partnering with other mattress retailers to offer a version of the Sleep Number bed in those retailers' stores. (Tr. 2614:3-2616:12.) While Select Comfort sold its "Core Line" of products in its own retail stores, it offered the "Personal Preference Line"[4] of products through its retail partners. (Tr. 107:8-16, 2551:17-2553:3, 2624:9-16.) In 2005, Sleepy's approached Select Comfort to become one of these retail partners. (Tr. 326:14-18.) Soon after, the parties executed the "Select Comfort Corporation Dealer Agreement" (the "Dealer Agreement"), which provided that Sleepy's would become an authorized dealer of the Personal Preference Line of Select Comfort products. (PX 133; Tr. 367:20-22).

But Sleepy's sales of the Personal Preference Line products never took off. (Tr. 144:25-145:10.) At some point, Sleepy's blamed Select Comfort for allegedly disparaging the Personal Preference Line to potential customers. (Tr. 191:13-

---

D.E. 839; 3/30/12 pp. 804-899 D.E. 860-2; 4/11/12 pp. 1490-1610 D.E. 781; 4/24/12 pp. 2203-2352 D.E. 813; 4/26/12 pp. 2471-2590 D.E. 815; 4/27/12 pp. 2591-2713 D.E. 816; 4/30/12 pp. 2714-2844 D.E. 860-7; and 6/13/12 pp. 3269-3315 D.E. 860-13.

[4] The Personal Preference Line was designed to complement the Core Line by offering models that fall between the Core Line models. (Tr. 105:8-106:11.)

3

192:6.) To test its theory, Sleepy's ordered its managers to perform "secret shops" of Select Comfort retail stores. In a "secret shop," Sleepy's employees would enter a Select Comfort retail store, pose as a potential customer, and record the experience through a tape recorder or a written report. (See, e.g., PX 1.22; Tr. 861:19-862:1, 865:7-868:4.)

After conducting these secret shops, Sleepy's began to formulate a potential lawsuit against Select Comfort. (DX 95.) Three Sleepy's executives played an important role in the circumstances that led to this lawsuit: (1) founder and CEO, Harry Acker ("Acker") (Tr. 87:4-6, 385:15-22); (2) Executive Vice President of Sales and Marketing, Michael Bookbinder ("Bookbinder") (Tr. 74:13-18, 77:18-78:14); and (3) Vice President of Merchandising, Ira Fishman ("Fishman") (Tr. 92:14-20). In a November 6, 2006 conference call with Bookbinder and Fishman, which was recorded, Acker discussed that "[t]his may be an enormous, fabulous lawsuit for Sleepy's to collect damages." (DX 95 at 4.)[5]

He continued:

> This may be very good because if we start getting involved in a lawsuit especially in a class action and it gets publicity it will not be good for [Select Comfort]. This cannot help them at all in the industry, it won't mean a thing to the consumer, but it will for people who want to do business with them. Get

---

[5] For the purposes of this Order, the Court will use the page numbers generated by the Electronic Case Filing System ("ECF") when referring to the parties' exhibits.

4

>  all of this information to [Sleepy's general counsel] and another law firm, one that specializes in this. Find out who does this.

(DX 95 at 4). Acker also instructed his employees to conduct a "blitz"[6] of secret shops at certain Select Comfort stores to gather information. (See, e.g., DX 295; Tr. 213:12-24). Acker's statements are particularly relevant because, in Bookbinder's words, "Harry [Acker] is the boss." (Tr. 385:15-22); (see also Tr. 87:4-6 ("[T]he executive team . . . report[ed] up to Harry Acker, who was the CEO and owner of the company.")).

Separately, Acker instructed the Sleepy's salesforce to e-mail Bookbinder if they knew of customers who said that Select Comfort disparaged Sleepy's or Sleepy's products. (DX 36.) Bookbinder received zero responses. (Tr. 498:7-501:6.)

At a meeting in January 2007, Sleepy's presented Select Comfort with summaries of its secret shops and threatened to sue. (Tr. 2759:2-20, 2770:13-22, 2827:2-2829:12.) Select Comfort ignored the threat, insisted that the Dealer Agreement had been terminated at that point, and proposed steps to wind-up the parties' business relationship. (PX 31.) In April 2007, the parties negotiated and signed a Wind-Up Agreement, which terminated their relationship. (PX 123.)

---

[6] Bookbinder testified that the term "blitz" refers to "sending out the troops to . . . complete [a] task in a big way." (Tr. 266:17-267:9.)

2. Procedural History

On August 24, 2007[7], Sleepy's commenced this case in Nassau County Supreme Court. (See Compl.)[8] Select Comfort later removed the case to this Court based on diversity of citizenship. (See Not. of Removal, Docket Entry 1, at 1-6.) Sleepy's asserts claims for (1) breach of contract (Am. Compl., Docket Entry 326, ¶¶ 52-59); (2) fraudulent inducement (Am. Compl. ¶¶ 60-65); (3) slander per se (Am. Compl. ¶¶ 66-78); (4) breach of the implied covenant of good faith and fair dealing (Am. Compl. ¶¶ 79-85); (5) unfair competition (Am. Compl. ¶¶ 86-90); and (6) violation of the Lanham Act (Am. Compl. ¶¶ 91-94). Essentially, Sleepy's argues that Select Comfort disparaged Sleepy's and its products, thus depriving Sleepy's of profits. (See, e.g., Am. Compl. ¶¶ 22, 38.) Select Comfort denies these allegations and consistently asserts that Sleepy's lawsuit was a competitive ploy to force Select Comfort to renegotiate the Dealer Agreement. (See generally Ans. to Am. Compl., Docket Entry 329;

---

[7] Sleepy's initially filed its complaint in March 2007, but the parties entered into a Stipulation of Discontinuance Without Prejudice in an attempt to amicably resolve the matter in April 2007. ("Initial Compl.," Def.'s Aff. Ex. T, Docket Entry 42-6); ("Stipulation of Discontinuance Without Prejudice," Def.'s Aff. Ex. U, Docket Entry 42-7, at 2-8). Sleepy's refiled its case on August 24, 2007.

[8] The August 24, 2007 Complaint can be found at Docket Entry 1, at pages 10-56. The page numbers to cites at Docket Entry 1 are those generated by the ECF System.

Def.'s Br., Docket Entry 863, at 3) ("After the Dealer Agreement between Defendant and Plaintiff expired . . . Plaintiff devised its scheme to conduct secret shops in an effort to pressure Defendant into continuing a relationship with Plaintiff.").

The case then proceeded to a bench trial before Judge Thomas C. Platt from March through June 2012. Following the liability phase of that trial, Select Comfort moved for judgment as a matter of law, which Judge Platt granted on all claims. (Sept. 2012 Order, Docket Entry 825.) Plaintiff then filed a partial appeal to the Second Circuit.[9] (Not. of Appeal, Docket Entry 830.)

On February 27, 2015, the Second Circuit affirmed in part and vacated in part Judge Platt's Order and remanded a number of Plaintiff's claims to this Court for resolution. Sleepy's LLC v. Select Comfort Wholesale Corp., 779 F.3d 191, 193 (2d Cir. 2015). Following remand, four claims remained: (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) slander per se, and (4) unfair competition. (Id. at 198-203.) On July 21 and 22, 2015, this Court received expert testimony on damages to complete the trial record. (See Docket Entries 852, 853.)

---

[9] Plaintiff did not appeal the Court's dismissal of its Lanham Act and fraudulent inducement claims.

7

On September 22, 2015, the Court dismissed Plaintiff's remaining claims.[10] (Sept. 2015 Order, Docket Entry 859.) First, as to the breach of contract claim, the Court held that Select Comfort did not breach a particular provision of a partnership agreement with Sleepy's within the context of the entire agreement. (Sept. 2015 Order at 21-22.) Second, the Court found that the general obligation to act in good faith "does not beget a separate cause of action." (Sept. 2015 Order at 26.) Third, the Court dismissed twelve causes of action for slander per se because there was no evidence that the allegedly defamatory statements were overheard by any third parties. (Sept. 2015 Order at 30-31.) And finally, as to the unfair competition claim, the Court found that Select Comfort did not misappropriate a commercial advantage belonging to Sleepy's. (Sept. 2015 Order at 38-39.) Judgment was entered on October 22, 2015. (Docket Entry 861.)

---

[10] Notably, Select Comfort moved to strike and preclude all evidence of the secret shops because of Sleepy's spoliation of evidence. (See Docket Entry 770 at 1.) The Court noted that "Sleepy's could not produce (a) the instructions for the secret shops, (b) any original notes from employees that performed the secret shops, (c) any original recordings of the secret shops, or (d) any original reports of the secret shops." (Sept. 2015 Order at 13, n.12.) Select Comfort argued, and the Court agreed, that "Sleepy's engaged in egregious, grossly negligent spoliation of evidence in the face of contemplated litigation justifying the imposition of sanctions." (Sept. 2015 Order at 13, n.12 (citing West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999)).) Ultimately, the Court chose not to impose any sanctions because "Plaintiff's claims all fail[ed] even when considering the evidence of which Select Comfort urge[d] exclusion." (Sept. 2015 Order at 13, n.12.)

As the prevailing party, Select Comfort now moves for attorney's fees under the Lanham Act.[11] (Docket Entry 862.) In support, Select Comfort makes three principal arguments: (1) Sleepy's pursued its claims in bad faith--particularly, to gain leverage in order "to renegotiate the Dealer Agreement on terms more favorable to [Sleepy's]" (Def.'s Br. at 9-10); 2) Sleepy's failed to introduce any admissible evidence to support its claims (Def.'s Br. at 10-13); and (3) Sleepy's "engaged in egregious, grossly negligent spoliation of evidence in the face of contemplated litigation" (Def.'s Br. at 13-14) (citing Sept. 2015 Order at 13, n.12)). Sleepy's argues in opposition that it had substantial evidence to support its claims and that the lawsuit was not a competitive ploy. (Pl.'s Br., Docket Entry 865, at 16, 21.)[12]

---

[11] Select Comfort also moves for an award of attorney's fees under Federal Rules of Civil Procedure 11 and 54(d)(2) and Local Rule 54.1(c)(7). First, Rule 11 is inapplicable here because Select Comfort never invoked Rule 11's "safe harbor" provision, which gives the opposing party twenty-one days to correct or withdraw certain factual or legal contentions at issue. See FED. R. CIV. P. 11(c)(2). Second, both Rule 54(d)(2) and Local Rule 54.1(c)(7) only discuss the procedural requirements to file a motion for attorney's fees. In other words, these provisions do not provide a statutory basis for attorney's fees.

[12] For ease of reference, the Court will use the page numbers generated by the ECF System when referring to Plaintiff's Brief.

DISCUSSION

Under Section 35(a) of the Lanham Act, the Court "may award reasonable attorney's fees to the prevailing party" in "exceptional cases." 15 U.S.C. § 1117(a). The Second Circuit has clarified that "exceptional cases" are those involving "fraud, bad faith, or willful infringement." Prot. One Alarm Monitoring, Inc. v. Exec. Prot. One Sec. Serv., LLC, 553 F. Supp. 2d 201, 207 (E.D.N.Y. 2008) (citing Gordon and Breach Sci. Publishers S.A. v. Am. Inst. of Physics, 166 F.3d 438, 439 (2d Cir. 1999) and Bambu Sales, Inc. v. Ozak Trading Inc., 58 F.3d 849, 854 (2d Cir. 1995)). The Court may find an "exceptional case," for example, where: (1) "plaintiff brought suit in bad faith without an investigation of the merits of his claim;" (2) "plaintiff's claims had no real substance;" or (3) "plaintiff filed suit as a competitive ploy." New Sensor Corp. v. CE Distribution LLC, 367 F. Supp. 2d 283, 287 (E.D.N.Y. 2005) (internal quotation marks and citation omitted). In other words, the Court must decide whether the plaintiff engaged in "misconduct . . . during the course of the litigation" to justify an award of attorney's fees. See Patsy's Brand, Inc. v. I.O.B. Realty, Inc., 317 F.3d 209, 221 (2d Cir. 2003). Ultimately, the decision to award attorney's fees "'fall[s] well within the district court's discretion, and absent evidence of its abuse,' will not be disturbed on review." Conopco, Inc. v. Campbell Soup Co., 95 F.3d 187, 194 (2d Cir. 1996) (quoting Getty Petroleum Corp.

v. Bartco Petroleum Corp., 858 F.2d 103, 114 (2d Cir. 1988), cert. denied 490 U.S. 1006, 109 S. Ct. 1642, 104 L. Ed. 2d 158 (1989)) (alteration in original).

Courts in this Circuit have awarded attorney's fees in Lanham Act cases "where there is some evidence that the plaintiff filed the action for an improper purpose." Multivideo Labs, Inc. v. Intel Corp., No. 99-CV-3908, 2000 WL 502866, at *2 (S.D.N.Y. Apr. 27, 2000) (collecting cases); compare Mennen Co. v. Gillette Co., 565 F. Supp. 648, 657 (S.D.N.Y. 1983) (awarding attorney's fees where there was a "substantial overtone in [the] case to warrant an inference that [the] suit was initiated as a competitive ploy" because the plaintiff's claims had "no real substance"), aff'd, 742 F.2d 1437 (2d Cir. 1984) with Gamla Enters. N. Am., Inc. v. Lunor-Brillen Design U. Vertriebs GmbH, No. 98-CV-0992, 2000 WL 193120, at *5 (S.D.N.Y. Feb. 17, 2000) (declining to award attorney's fees where plaintiff's pursuit of its trademark infringement claims "was at worst negligent" because the defendant's trademark was found to be "confusingly similar to [the plaintiff's] existing registered mark" and the plaintiff "moved for voluntary dismissal after taking a single deposition").

Here, Select Comfort has established that there are "substantial overtone[s]" to suggest that the case was filed as a "competitive ploy." Mennen, 565 F. Supp. at 657. As this Court acknowledged, "Sleepy's had undertaken a mission to gather

11

ammunition for a future lawsuit against Select Comfort . . . In light of this aim, Sleepy's inquiry cannot be considered an 'honest inquiry or investigation.'" (Sept. 2015 Order at 34 (quoting Restatement (Second) of Torts § 584 (1977)). In fact, Acker stated that he wanted to file "an enormous, fabulous lawsuit," noting that it would be "very good" for Sleepy's because if the suit "gets publicity it [would] not be good for [Select Comfort]." (DX 95 at 4.)

Moreover, the cases Sleepy's cites in opposition have no bearing on the facts here. (See Pl.'s Br. at 17-18.) In <u>Santana Products, Inc. v. Sylvester & Associates, Ltd.</u>, for example, the defendant asserted that the plaintiff's lawsuit was a competitive ploy because the plaintiff's president allegedly threatened one of the defendant's representatives, yelling "I'm coming after you. I'm coming after you. . . . I'm coming after you in New York." No. 98-CV-6721, 2006 WL 7077215, at *14 (E.D.N.Y. Nov. 13, 2006) (internal quotation marks and citation omitted). But unlike the short timeframe in this case, eight years passed before the <u>Santana</u> plaintiff filed a lawsuit, and the representative downplayed the incident in a deposition: "I don't think there was hard feelings. I think it was just a matter of different ways of doing business." <u>Id.</u> (internal quotation marks and citation omitted). The court found that the representative's deposition testimony contradicted the allegation that the incident "generated significant animosity

12

that would trigger a retaliatory lawsuit." Id. Here, Acker, Bookbinder, and Fishman participated in a conference call in November 2006, (DX 95), and less than five months later, Sleepy's filed suit against Select Comfort. (See Initial Compl.)

Nor does the Southern District's reasoning in The Gameologist Group, LLC v. Scientific Games International, Inc. compel a contrary conclusion. No. 09-CV-6261, 2012 WL 1446922, at *2-3 (S.D.N.Y. Apr. 26, 2012). There, the defendants sought attorney's fees because the plaintiff's claims were purportedly baseless, not because the plaintiff, like Sleepy's, may have filed suit to exploit a business advantage. Id. at *2. In this case, however, Acker instructed his employees to conduct a "blitz" of secret shops to gather information on Select Comfort to support a potential lawsuit. (See, e.g., DX 295; Tr. 213:12-24). Accordingly, Select Comfort has raised an inference that Sleepy's "filed suit as a competitive ploy." New Sensor, 367 F. Supp. 2d at 287 (internal quotation marks and citation omitted).

Similarly, Select Comfort has made a showing that Sleepy's lacked evidence to support its claims. (See Def.'s Br. at 5-6.) As a preliminary matter, to establish a claim for false advertising under the Lanham Act, Sleepy's was required to show that Select Comfort's alleged statements were (1) commercial speech, (2) made to influence customers to buy Select Comfort's products, and (3) were "'disseminated sufficiently to the relevant

13

purchasing public.'" See Boule v. Hutton, 328 F.3d 84, 90-91 (2d Cir. 2003) (quoting Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc., 314 F.3d 48, 56 (2d Cir. 2002)); see Lanham Act, 15 U.S.C. § 1125(a) (2012). The Court noted that Sleepy's failed to produce any customers to testify that Select Comfort made disparaging statements. (Tr. 3304:20-24) ("[T]here is no proof of any such denigration . . . that [the Court] may rely on."); (Tr. 3310:23-3311:3) ("We've been here for four months now and you haven't produced any such evidence [of denigration]."). Additionally, when Acker instructed the Sleepy's sales force to e-mail Bookbinder if they knew of any Select Comfort employees making disparaging remarks about Sleepy's or its products, Bookbinder received zero responses.[13] (See DX 36; Tr. 498:7-501:6.) And although the Court stated on one occasion that both sides had a "great deal of proof," (Tr. 1492:25-1493:1), it also expressed "real misgivings about the admissibility of a great deal of the evidence . . . allowed in and considered during the course of the case." (Tr. 1491:17-19.)

In response, Sleepy's argues that if its Lanham Act claim was meritless, "the Court would have dismissed it at the summary

---

[13] This Court surmised that "the poor sales figures were quite likely the result of Sleepy's failure to advertise the Personal Preference Line as promised . . . or of Sleepy's salespeople denigrating the Personal Preference Line." (Sept. 2015 Order at 8, n.7 (citations omitted)).

14

judgment stage and there would have never been a trial . . . ." (Pl.'s Br. at 5.) The Court disagrees. On a summary judgment motion, the role of the Court is not "'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ., 444 F.3d 158, 162 (2d Cir. 2006) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986)). More to the point, the Southern District explained that "the fact that plaintiff managed to bring these [Lanham Act] claims to trial is of little relevance as a general principle. Attorneys' fees have been awarded to a defendant under § 1117(a) after a trial has been completed." IMAF, S.p.A. v. J.C. Penney Co., 810 F. Supp. 96, 99 (S.D.N.Y. 1992) (citations omitted).

Finally, the Court finds that attorney's fees are especially warranted in light of Sleepy's "egregious, grossly negligent spoliation of evidence . . . ." (Sept. 2015 Order at 13, n.12 (citing West, 167 F.3d at 779).) Sleepy's argues that the Court merely "criticized Sleepy's failure to retain materials . . . and found sanctions were not warranted." (Pl.'s Br. at 23) (emphasis in original). Not so. As this Court made clear:

> Throughout the testimony of Sleepy's secret shoppers, a pattern emerged: beyond oral testimony, Sleepy's offered almost no primary evidence from those [secret] shops. It became apparent that Sleepy's could not produce

15

> (a) the instructions for the secret shops, (b) any original notes from employees that performed the secret shops, (c) any original recordings of the secret shops, or (d) any original reports of the secret shops. <u>Instead, Sleepy's offered compilations of the secret shop reports that were not prepared by a testifying witness and--at least on some occasions--had been altered.</u> Sleepy's made no attempt to preserve any of this original evidence; a formal litigation hold was apparently never instituted, and none of the testifying secret shoppers were told to retain their original reports or recordings.

(Sept. 2015 Order at 13, n.12 (citations omitted) (emphasis added).) Indeed, the Court only declined to impose sanctions because "Plaintiff's claims all fail[ed] even when considering the evidence of which Select Comfort urge[d] exclusion." (Sept. 2015 Order at 13, n.12.) Thus, in the Court's discretion, Defendant's motion for attorney's fees is GRANTED.

## CONCLUSION

Defendant's motion for attorney's fees (Docket Entry 862) is GRANTED. The Court directs the parties to confer and submit a proposed briefing schedule for Defendant's separate application for reasonable attorney's fees within twenty (20) days of the date of this Memorandum & Order.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: January __11__, 2016
Central Islip, New York