UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
SLEEPY'S LLC,

                         Plaintiff,

                                              MEMORANDUM & ORDER
         -against-                            07-CV-4018(JS)(ARL)

SELECT COMFORT WHOLESALE CORPORATION,
SELECT COMFORT RETAIL CORPORATION,
and SELECT COMFORT CORPORATION,

                         Defendants.
----------------------------------------X
APPEARANCES
For Plaintiff:        Andrew W. Singer, Esq.
                      David J. Kanfer, Esq.
                      Lewis Donald Prutzman, Esq.
                      Paul D. Sarkozi, Esq.
                      Vincent J. Syracuse, Esq.
                      George Foulke Du Pont, Esq.
                      Stefanie Marie Ramirez, Esq.
                      Tannenbaum Helpern Syracuse & Hirschtritt LLP
                      900 Third Avenue
                      New York, NY 10022

For Defendants:       Heidi A.O. Fisher, Esq.
                      Andrew S. Hansen, Esq.
                      Fox Rothschild LLP
                      Campbell Mithun Tower—Suite 2000
                      222 South Ninth Street
                      Minneapolis, MN 55402

                      Joseph S. Miller, Esq.
                      Michael J. Bleck, Esq.
                      Michael K. Gravink, Esq.
                      Michelle R. Schjodt, Esq.
                      Oppenheimer Wolff & Donnelly LLP
                      45 South 7th Street, Suite 3300
                      Minneapolis, MN 55402

                      Joshua S. Androphy, Esq.
                      Michael Faillace & Associates, P.C.
                      60 East 42nd Street, Suite 2540
                      New York, NY 10165

SEYBERT, District Judge:

Currently pending before the Court is Magistrate Judge Arlene R. Lindsay's Report and Recommendation dated August 8, 2016 (the "R&R") with respect to defendants Select Comfort Corporation, Select Comfort Retail Corporation, and Select Comfort Wholesale Corporation's[1] motion for attorneys' fees. (Docket Entries 871 and 883.) Judge Lindsay recommends that Select Comfort be awarded attorneys' fees and costs totaling $3,507,388.65. (R&R, Docket Entry 883.) Plaintiff Sleepy's LLC ("Plaintiff" or "Sleepy's") has filed objections, which are presently before the Court ("Plaintiff's Objections"). (Pl.'s Obj., Docket Entry 884.) For the reasons set forth below, Plaintiff's Objections are OVERRULED IN PART and SUSTAINED IN PART, and the R&R is ADOPTED IN PART and REJECTED IN PART.

<u>BACKGROUND</u>

The Court presumes familiarity with the facts of this matter, which are set forth in detail in its Memorandum and Order dated September 22, 2015. <u>Sleepy's LLC v. Select Comfort Wholesale Corp.</u> ("<u>Sleepy's I</u>"), 133 F. Supp. 3d 483 (E.D.N.Y. 2015). Briefly, Sleepy's commenced this action against Select Comfort asserting the following claims: breach of contract (causes of

---

[1] The Court will refer to defendants Select Comfort Wholesale Corporation, Select Comfort Retail Corporation, and Select Comfort Corporation collectively as "Defendant" or "Select Comfort."

action one and two), fraudulent inducement, slander per se (causes of action four through seven), breach of the implied covenant of good faith and fair dealing, unfair competition, and violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). (See generally Am. Compl., Docket Entry 326, ¶¶ 52-94.) Sleepy's claims arise out of, inter alia: (1) a sales agreement with Select Comfort that made Sleepy's an authorized retailer of Select Comfort's Sleep Number beds (the "Agreement"), and (2) information obtained through "secret shops," where Sleepy's employees were instructed to pose as potential customers at Select Comfort stores and observe whether Select Comfort employees made disparaging comments about Sleepy's. Sleepy's I, 133 F. Supp. 3d at 488-91.

Following a bench trial on liability before Judge Thomas C. Platt, Select Comfort moved for judgment as a matter of law. (Sept. 2012 Order, Docket Entry 825.) Judge Platt granted Select Comfort's motion on all claims. (See Sept. 2012 Order.) Sleepy's filed a partial appeal of Judge Platt's Order and the Second Circuit affirmed in part and vacated in part. Sleepy's LLC v. Select Comfort Wholesale Corp. ("Sleepy's II"), 779 F.3d 191, 193 (2d Cir. 2015). Four claims remained following remand. Id. On September 22, 2015, this Court dismissed Sleepy's remaining claims. Sleepy's I, 133 F. 3d at 487.

I. <u>Motion for Attorneys' Fees</u>

On November 5, 2015, Defendant moved for attorneys' fees under the Lanham Act pursuant to 15 U.S.C. § 1117(a) ("Section 1117(a)"). (Def.'s Nov. 2015 Mot., Docket Entry 862.)[2] On January 11, 2016, the Court granted Defendant's motion, holding that this matter constituted an "exceptional case" warranting an award of attorneys' fees. <u>See</u> generally <u>Sleepy's LLC v. Select Comfort Wholesale Corporation</u>, No. 07-CV-4018, 2016 WL 126377 (E.D.N.Y. Jan. 11, 2016). The Court did not determine the amount of attorneys' fees to be awarded and directed the parties to submit a proposed briefing schedule for Defendant's separate application for reasonable attorneys' fees. <u>Id.</u> at *6.

On February 19, 2016, Defendant filed its pending motion for attorneys' fees. (Def.'s Mot., Docket Entry 871.) Defendant requested a total of $4,483,755.57 in attorneys' fees and costs. (Def.'s Aff., Docket Entry 872, ¶ 39.) Plaintiff opposed Defendant's motion, arguing, <u>inter</u> <u>alia</u>, that Defendant's fees should be limited to "work fairly allocable to the Lanham Act claim" and subject to additional reductions. (Pl.'s Br., Docket Entry 874, at 18.)

---

[2] Select Comfort's motion also sought attorneys' fees pursuant to Federal Rules of Civil Procedure 11 and 54(d)(2). (Def.'s Nov. 2015 Mot.)

On April 12, 2016, the Court referred Defendant's motion to Judge Lindsay for a report and recommendation on whether the motion should be granted, as well as a determination of the appropriate amount of damages, costs, and/or fees to be awarded. (Docket Entry 879.)

II.  The R&R

On August 8, 2016, Judge Lindsay issued her R&R recommending that Defendant's motion be granted with a reduction of its requested attorneys' fees and costs. (See generally R&R.) The R&R notes that Defendant was represented by Oppenheimer Wolff & Donnelly ("Oppenheimer"), a Minneapolis firm that later merged with Fox Rothschild LLP and assumed that firm's name. (R&R at 5 n.3.) Additionally, Defendant retained Olshan Frome Wolosky LLP ("Olshon Frome") as local counsel and later retained Bryan Cave LLP as local counsel. (R&R at 5; Def.'s Aff. ¶ 5.) Judge Lindsay concluded that Oppenheimer's billing rates should not be reduced, but Select Comfort should not be awarded the time billed by Thomas Marek and Sally Tange based on the absence of any information regarding their positions or hourly rates. (R&R at 8 n.5.) Judge Lindsay also recommended that the Court decline to award fees for the time billed by Olshon Frome or Bryan Cave based on a lack of information regarding their attorneys' qualifications. (R&R at 17 n.9.)

Judge Lindsay rejected Plaintiff's argument that Defendant should only be awarded attorneys' fees for work related to the Lanham Act claim and concluded that the claims were so intertwined as to render it impossible to isolate the time devoted to the Lanham Act claim. (R&R at 14.) Judge Lindsay noted that Plaintiff's ten causes of action were "based on a single set of facts and an overarching theory, namely, that Select Comfort had engaged in an unfair business scheme [ ] to deprive [Sleepy's] of profits through a pattern of disparagement." (R&R at 14.) However, Judge Lindsay recommended that Defendant not be awarded fees incurred after the Lanham Act claim was dismissed on September 25, 2012. (R&R at 15.)

Additionally, Judge Lindsay recommended a ten percent reduction of Oppenheimer's overall hours incurred before Sept. 26, 2012 to account for duplicative work. (R&R at 19.) Similarly, Judge Lindsay recommended that Defendant be awarded fees for the time spent preparing its motion for attorneys' fees with a ten percent reduction of its time. (R&R at 21.) With respect to costs, Judge Lindsay recommended that Oppenheimer be awarded travel and meal costs with a fifty percent reduction of its time. (R&R at 20.) Judge Lindsay further recommended that Defendant be awarded online research costs. (R&R at 21.)

After the previously noted adjustments, Judge Lindsay recommended attorneys' fees and costs totaling $3,507,388.05. (R&R at 22.)

III. <u>Plaintiff's Objections</u>

Plaintiff argues that Judge Lindsay erred in concluding that its claims were sufficiently intertwined to support an award of attorneys' fees to Defendant for its defense of all claims. (Pl.'s Obj. at 4-5.) Plaintiff avers that each of its ten claims "involved a distinct sub-set of facts and issues" and were based on distinct legal theories. (Pl.'s Obj. at 6, 8-11.) As a result, Plaintiff argues that Defendant's requested fees should be apportioned to exclude the non-Lanham Act claims. (Pl.'s Obj. at 15-18.)

Plaintiff also argues that work performed regarding five motions should be excluded from Defendant's application, as these motions were unrelated to the Lanham Act claim. (Pl.'s Obj. at 12-15.) Plaintiff alleges that a "reasonable approximation" of the fees attributable to work performed regarding "the types of identifiable exclusively non-Lanham Act-related motions and projects, including the[se] five motions . . . would be at least $250,000." (Pl.'s Obj. at 18.) Plaintiff alleges that an exact allocation of the remaining fees is impossible because Oppenheimer's billing records provide daily entries describing the tasks performed each day without specifying the time spent on each

individual task.  (Pl.'s Obj. at 15.)  As a result, Plaintiff proposes that after the approximately $250,000 of fees for exclusively non-Lanham Act tasks are subtracted from Defendant's requested fees, the Court should utilize an "even allocation" and award Defendant ten percent of $3,257,388.55, or $325,738.86.  (R&R at 17-18.)

IV.  <u>Defendant's Response</u>

Defendant argues that Plaintiff has inappropriately rehashed its initial arguments and attempted to expand its arguments to include "new analysis, evidentiary material, and case law that it could have, but did not, present in its original briefing."  (Def.'s Resp., Docket Entry 885, at 2.)  As a result, Defendant avers that Plaintiff's new arguments should be rejected and the Court should review the R&R for clear error.  (Def.'s Resp. at 12.)

Defendant alleges that Plaintiff's Objections are meritless.  <u>First</u>, Defendant avers that Judge Lindsay properly declined to recommend apportioning its requested fees, as Plaintiff's claims involved a "common core of facts" or "related legal theories."  (Def.'s Resp. at 3-4 (internal quotation marks and citation omitted).)  Defendant argues that Plaintiff has created an unsupported, heightened standard by taking the position that claims are only "intertwined" when they are "essentially the

same . . . or essentially congruent." (Def.'s Resp. at 4 (internal quotation marks and citation omitted).)

Second, Defendant urges the Court to reject Plaintiff's "rehashe[d]" argument that Defendant is not entitled to fees for five motions that allegedly have no relation to the Lanham Act claim. (Def.'s Resp. at 12.) Defendant argues that Plaintiff fails to provide any support for the notion that work performed on the Lanham Act motions amount to $250,000 in fees. (Def.'s Resp. at 12.) Additionally, Defendant argues that these motions were related to the Lanham Act claim, as "[t]he facts and issues were so intertwined that researching and litigating an issue related to one claim necessarily informed work on another[.]" (Def.'s Resp. at 12-13.)

Finally, Defendant argues that reducing the recommended fee would "undercut" the legislative intent underlying a fee award in exceptional cases based on a finding of bad faith. (Def.'s Resp. at 15.) Defendant also argues that it would be within the Court's discretion to award fees pursuant to its inherent authority or as spoliation sanctions. (Def.'s Resp. at 15-16.)

## DISCUSSION

"When evaluating the report and recommendation of a magistrate judge, the district court may adopt those portions of the report to which no objections have been made and which are not facially erroneous." Walker v. Vaughan, 216 F. Supp. 2d 290, 291

(S.D.N.Y. 2002) (citations omitted).  A party may serve and file specific, written objections to a magistrate judge's report and recommendation within fourteen days of being served with the recommended disposition.  See FED. R. CIV. P. 72(b)(2).  Upon receiving any timely objections to the magistrate judge's recommendation, the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1); see also FED. R. CIV. P. 72(b)(3).  A party that objects to a report and recommendation must point out the specific portions of the report and recommendation that they are objecting to.  See Barratt v. Joie, No. 96-CV-0324, 2002 WL 335014, at *1 (S.D.N.Y. Mar. 4, 2002) (citations omitted).

When a party raises an objection to a magistrate judge's report, the Court must conduct a de novo review of any contested sections of the report.  See Pizarro v. Bartlett, 776 F. Supp. 815, 817 (S.D.N.Y. 1991).  But if a party "makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error."  Walker, 216 F. Supp. 2d at 291 (internal quotation marks and citation omitted).

I.   Plaintiff's Objections

At the outset, the Court notes that the parties have not objected to the portions of the R&R recommending: (1) Defendant

should not be awarded (a) time billed by Mr. Marek and Ms. Tange; (b) time billed by Olshon Frome and Bryan Cave, and (c) fees incurred after the Lanham Act claim was dismissed on fees incurred before September 26, 2012; (2) Oppenheimer's overall hours should be reduced by ten percent; and (3) Defendant should be awarded (a) time spent preparing its fee application with a ten percent reduction, (b) travel and meal costs with a fifty percent reduction, and (c) online research costs. The Court reviews those portions of the R&R for clear error and finds none. See Urena v. N.Y., 160 F. Supp. 2d 606, 609-10 (S.D.N.Y. 2011) (where no timely objections have been made to a report and recommendation, the "court need only satisfy itself that there is no clear error on the face of the record") (internal quotation marks and citation omitted).

The Court will address Defendant's arguments regarding the appropriate standard of review, (Def.'s Resp. at 2, 5-6, 12), before turning to the merits of Plaintiff's Objections.

A.  Applicable Standard of Review

Defendant alleges that the Court should review the R&R for clear error, arguing that Plaintiff's Objections consist of reiterations of prior arguments and/or attempts to expand on prior arguments with new cases, facts, or analyses. (See Def.'s Resp. at 2, 5, 11-12.) Particularly, Defendant argues: (1) Plaintiff recycled its argument that certain exclusively non-Lanham Act

motions should not be included in Defendant's fee award, and (2) Plaintiff has both rehashed and amplified its prior argument that the Court should apportion the fee award. (Def.'s Resp. at 2, 5-6.) The Court finds that the R&R should be reviewed for clear error with respect to Plaintiff's objection regarding the exclusion of non-Lanham Act motions and the R&R should be reviewed de novo with respect to Plaintiff's broader objection regarding apportionment.

Plaintiff's argument that Judge Lindsay erred in failing to recommend the exclusion of work performed regarding five non-Lanham Act motions is a reiteration of its identical argument raised in opposition to Defendant's underlying motion. (See Pl.'s Obj. at 12-15.) Indeed, Plaintiff's Objections highlight the same five motions it addressed in its underlying opposition, and a large portion of this section of its Objections is drawn verbatim from Plaintiff's underlying opposition brief. (Compare Pl.'s Obj. at 12-15 with Pl.'s Br., at 10-11.) Accordingly, the Court will review the R&R for clear error with respect to Judge Lindsay's failure to recommend excluding the motions identified by Plaintiff. See Walker, 216 F. Supp. 2d at 291.

However, the Court is not persuaded by Select Comfort's contention that Sleepy's objection regarding apportionment is a rehashing of its prior argument. (Def.'s Resp. at 2.) In its opposition to the underlying attorneys' fees motion, Plaintiff

alleged that its claims should be apportioned and argued that Defendant had an obligation to attempt an apportionment. (Pl.'s Br., at 8.) Plaintiff requested that Defendant's motion be denied based on its failure to attempt an apportionment, or, alternatively, that Defendant be directed to resubmit its motion and address this issue. (Pl.'s Br. at 8.) Notwithstanding Plaintiff's prior arguments regarding apportionment, the Court finds that Plaintiff has filed a specific objection--rather than a mere reiteration of a prior argument--to Judge Lindsay's conclusion that apportionment was inappropriate. (Pl.'s Obj. at 3-11.) Indeed, as addressed below, Defendant concedes that Plaintiff's Objections contain legal support that was not included in its opposition. (See Def.'s Resp. at 2.) Accordingly, de novo review is appropriate. See FED. R. CIV. P. 72(b).

Defendant also argues that the Court should not consider the "newly-expanded arguments" set forth in Plaintiff's Objections to the extent that Plaintiff's analyses, evidentiary support, and case law were not referenced in its underlying opposition. (Def.'s Resp. at 2-3, 5-6.) Particularly, Defendant argues that while Plaintiff's underlying opposition relied on the "cursory argument that its non-Lanham Act claims were 'distinctly different' from its Lanham Act claim based on nothing more than the claim titles," Plaintiff's Objections "for the first time, undertake[ ] a multi-page, claim-by-claim analysis in an attempt to illustrate

Magistrate Judge Lindsay's error." (Def.'s Resp. at 5-6 (citations omitted).)

At the outset, the Court finds--and Defendant appears to concede--that the additional factual allegations and legal analysis in Plaintiff's Objections do not constitute a "new" argument as they amplify the previously addressed issue of apportionment. To the extent that Defendant takes issue with the number of new cases cited in Plaintiff's Objections, (Def.'s Resp. at 2), Defendant fails to cite any authority--nor is the Court aware of any--for the proposition that a litigant may not reference additional case law in objections to a report and recommendation.

With respect to the additional allegations in Plaintiff's Objections regarding the supporting facts and legal theories for each of its claims, (see Pl.'s Obj. at 8-12), the Court will exercise its discretion to consider these facts to the extent they constitute "additional evidence." Hynes v. Squillace, 143 F.3d 653, 656 (2d Cir. 1998) ("[b]oth [28 U.S.C.] § 636(b)(1) and Fed. R. Civ. P. 72(b) explicitly permit the district court to receive additional evidence as part of its review"). Accord Kazolias v. IBEWLU 363, 806 F.3d 45, 54 (2d Cir. 2015). But see O.M. v. CEC Entertainment Concepts, L.P., No. 14-CV-6041, 2016 WL 1275043, at *3 (E.D.N.Y. Mar. 31, 2016) (noting that courts generally do not consider new evidence raised in an objection to a report and recommendation "absent a compelling justification for

failure to present such evidence to the magistrate judge")
(internal quotation marks and citations omitted).  The substance
of Plaintiff's amplified factual allegations was certainly known
to Defendant, as it is merely a more detailed discussion of the
factual and legal theories underlying each claim.  Additionally,
the Court notes that Defendant has had an opportunity to respond
to these factual allegations, and its Response contains a counter-
summary of the factual and legal theories supporting each claim.
(See Def.'s Resp. at 7-12.)

      B.    Apportionment of Fees for Work Performed Regarding
           Non-Lanham Act Claims

      The Lanham Act provides, in relevant part, that "[t]he
Court in exceptional cases may award reasonable attorney fees to
the prevailing party."  15 U.S.C. § 1117(a).  Generally, "'[t]he
prevailing party in a multi-claim case which includes both Lanham
Act and non-Lanham Act counts should be entitled to attorney fees
only for work expended in prosecuting or defending the Lanham Act
counts.'"  N.Y. State Soc. of Certified Pub. Acct. v. Eric Louis
Assocs., Inc., 79 F. Supp. 2d 331, 353 (S.D.N.Y. 1999) (quoting
5 McCarthy on Trademarks and Unfair Competition § 30:103, at 178
(1999); alteration in original).  See also U.S. Structures, Inc.
v. J.P. Structures, Inc., 130 F.3d 1185, 1193 (6th Cir. 1997)
("under 15 U.S.C. § 1117(a), attorneys' fees are recoverable only

for work performed in connection with claims filed under the Lanham Act").

The Second Circuit has not directly addressed the issue of when a prevailing party is entitled to recover attorneys' fees pursuant to Section 1117(a) for work performed on non-Lanham Act claims. However, district courts in this Circuit have held that recovery of legal fees for work performed on non-Lanham Act claims is permitted where "the Lanham Act claims and non-Lanham Act claims are so intertwined that it is impossible to differentiate between work done on them." New Sensor Corp. v. CE Distr. LLC, 367 F. Supp. 2d 283, 292 n.7 (E.D.N.Y. 2005) (internal quotation marks and citation omitted); Eric Louis Assocs., 79 F. Supp. 2d at 353 (noting that the Court may award the entirety of the prevailing party's attorneys' fees where "'the claims are so intermingled that the factual basis and the legal theories are essentially the same'" (quoting 5 McCarthy, supra, at 178))).

The Ninth Circuit addressed this issue in Gracie v. Gracie, 217 F.3d 1060, 1069-70 (9th Cir. 2000). In that matter, the district court awarded the prevailing defendant attorneys' fees pursuant to Section 1117(a) that included fees for work related to non-Lanham Act claims. Gracie, 217 F.3d at 1069. The Ninth Circuit held that the emerging rule was that "a party cannot recover legal fees incurred in litigating non-Lanham Act claims unless the Lanham Act claims and non-Lanham Act claims are so

intertwined that it is _impossible to differentiate_ between work done on [them]." _Id._ at 1069 (internal quotation marks and citations omitted; emphasis in original). The Court remanded the matter for the district court to attempt an apportionment of the fees, holding that "the impossibility of making an _exact_ apportionment does not relieve the district court of its duty to make _some_ attempt to adjust the fee award in an effort to reflect an apportionment." _Id._ at 1069-70 (emphasis in original). The Ninth Circuit further held that an apportionment must be attempted unless the court determines that "the claims are so inextricably intertwined that even an estimated adjustment would be meaningless." _Id._ at 1070.[3]

Ninth Circuit district courts applying this principle to Section 1117(a) fee applications post-_Gracie_ have considered the commonality of the factual allegation and legal bases of the Lanham Act and non-Lanham Act claims in determining whether apportionment was appropriate. _See, e.g._, _DocRX, Inc. v. DocRX Dispense, Inc._, No. 14-CV-0815, 2015 WL 3959351, at *1 (D. Ariz. Jun. 30, 2015)

---

[3] District Courts in other Circuits have also held that attorneys' fees for non-Lanham Act claims may be awarded pursuant to Section 1117(a) where Lanham Act and non-Lanham Act claims are "inextricably intertwined." _See, e.g._, _Mike Vaughn Custom Sports, Inc. v. Piku_, No. 12-CV-13083, 2015 WL 4603171, at *3 (E.D. Mich. Jul 30, 2015); _Nightingale Home Healthcare, Inc. v. Anodyne Therapy, LLC_, No. 06-CV-1435, 2010 WL 1381418, at *6 (S.D. Ind. Mar. 31, 2010), _aff'd_, 626 F.3d 958 (7th Cir. 2010).

(awarding fees for Lanham Act and non-Lanham Act claims where "the
factual and legal bases of the non-Lanham Act claims [we]re
substantially identical to those of the Lanham Act claims, given
that all of the claims arose out of the same facts and
occurrences"); Albrecht v. Tkachenko, No. 14-CV-5442, 2015 WL
2227607, at *1 (N.D. Cal. May 11, 2015) (awarding fees for Lanham
Act and state law claims where the claims "relied on the same
factual allegations" and certain state law claims "stood or fell
with the Lanham Act claims"); and Fifty-Six Hope Road Music, Ltd.
v. A.V.E.L.A., Inc., 915 F. Supp. 2d 1179, 1189 (D. Nev. 2013),
aff'd, 778 F.3d 1059 (9th Cir. 2015) (applying a percentage
reduction where exact apportionment was impossible and noting that
while the claims implicated "a common core of facts," the matter
also involved distinct legal theories and issues). But see World
Triathalon Corp. v. Dunbar, 539 F. Supp. 2d 1270, 1281-82 (D. Haw.
2008), aff'd, 320 F. App'x 778 (9th Cir. 2009) ("the Court finds
that because the claims all arise out of the same facts and
occurrences, it is impossible to differentiate between the work on
specific claims and thus impossible to apportion the fees between
the Lanham Act and non-Lanham Act claims").

    In the absence of guidance from the Second Circuit, this
Court favors the approach utilized by the Ninth Circuit--namely,
that even if an exact apportionment is impossible, the Court must
attempt to apportion the claims unless they are "inextricably

intertwined." <u>Gracie</u>, 217 F.3d at 1069-70. In determining whether claims are "inextricably intertwined," this Court also deems it appropriate to consider not just whether the claims are based on common facts but whether they implicate common legal theories. Cf. <u>Costa v. Datapro, Inc.</u>, No. 10-CV-23172, 2012 WL 591307, at *5 (S.D. Fla. Feb. 22, 2012) (noting, with respect to a Section 1117(a) fee application, that "[t]he key factor in apportioning attorney's fees, however, is not whether the same conduct underlies both the compensable and non-compensable claims but whether it is possible to distinguish between <u>the</u> <u>work</u> that the attorney spent on the different claims") (citations omitted; emphasis in original).

Parenthetically, the Court rejects both parties' attempt to create their own standards for when claims are "inextricably intertwined." Plaintiff characterizes an award of attorneys' fees for Lanham Act and non-Lanham Act claims under Section 1117(a) as "intended for cases where the Lanham Act and other claims are essentially congruent, such as federal trademark infringement under § 43(a) of the Lanham Act and state common law trademark infringement or statutes analogous to the Lanham Act." (Pl.'s Obj. at 6.) However, Plaintiff provides no authority to support its narrow view of the types of claims that may be inextricably intertwined with Lanham Act claims. Defendant also attempt to devise its own standard by arguing that the Supreme Court decision

in <u>Hensely v. Eckerhart</u>, 461 U.S. 424, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983), provides guidelines "to determine whether a case is sufficiently 'intertwined'--those that involve a 'common core of facts' <u>or</u> are based on 'related legal theories.'" (Def.'s Resp. at 4.) <u>Hensley</u> involved a fee application pursuant to 42 U.S.C. § 1988 and addressed, <u>inter alia</u>, whether and when attorneys' fees should be apportioned to exclude work performed on unsuccessful claims. <u>Hensley</u>, 461 U.S. at 432, 435-40, 103 S.Ct. at 1939-43. While <u>Hensley</u> is instructive, it does not address apportionment under Section 1117(a) or an analogous situation where apportionment is based on the nature of the plaintiff's claims.

Plaintiff asserted a claim under Section 43 of the Lanham Act, 15 U.S.C. § 1125, and alleged that "in connection with the retail marketing and promotion of its Sleep Number Beds, Select Comfort has used in commerce false and misleading descriptions of fact and representations of fact[.]" (Am. Compl. ¶ 92.) In determining Defendant's motion for judgment as a matter of law, Judge Platt noted that Plaintiff attempted to support its Lanham Act claim by arguing that: (1) language in Defendant's Brand Standards Manual and promotional brochure violated the Lanham Act, and (2) allegedly disparaging statements made by Defendant's salespeople during the "secret shops" were part of a widespread corporate training policy that violated the Lanham Act. (Sept. 2012 Order at 30-34.)

The parties have spilled much ink debating whether Plaintiff's claims are part of the same overarching factual and legal theory or are totally distinct. (See Pl.'s Obj. at 8-12; Def.'s Resp. at 6-12.) However, the Court finds that it is beyond cavil that Plaintiff's claims share common facts. Particularly, evidence regarding statements made during the "secret shops" formed the basis for multiple non-Lanham Act claims. Judge Platt noted that Plaintiff relied on the "secret shops" to support one of its breach of contract claims, as well as its breach of implied covenant of good faith and fair dealing claim, unfair competition claim, and slander per se claims. (Sept. 2012 Order at 12-29.) See also Sleepy's II, 779 F.3d at 198 (noting that Plaintiff's claims for unfair competition and breach of the implied covenant of good faith and fair dealing "are based, broadly speaking, on Sleepy's allegations that regardless of whether Select Comfort's disparagements violated [Agreement] § 4(c), this and other hostile conduct violated Select Comfort's implied obligations to refrain from unfair competition and of good faith and fair dealing during the contract term," and "Sleepy's undertook to prove defamation through testimony of its 'secret shoppers' relating twelve instances of what was said to them by salespersons in Select Comfort stores"). The Court also acknowledges that in light of the overlap in the factual allegations supporting each claim, "[t]he parties may not have realized the significance of discovery

21

to particular claims until it had been obtained and reviewed." B&H Mfg. Co. Inc. v. Bright, No. 01-CV-6619, 2006 WL 547975, at *4 (E.D. Cal. Mar. 3, 2006).

Nevertheless, the Court finds that certain of Plaintiff's claims were based on legal theories and/or factual allegations distinct from those underlying the Lanham Act claim. Plaintiff's breach of contract claims were grounded in the construction and interpretation of the Agreement. (Platt Order at 4.) Additionally, Plaintiff specifically tied its unfair competition claim to the Agreement, (Sept. 2012 Order at 15-16), and Plaintiff's implied covenant of good faith and fair dealing claim related to the performance of the Agreement. Sleepy's I, 133 F. Supp. 3d at 497 (noting that the Uniform Commercial Code "imposes an obligation of good faith in [every contract's] performance and enforcement," and that under Minnesota common law, this covenant "may not be construed to impose obligations beyond the scope of the contract" (internal quotation marks and citations omitted; alteration in original)). Additionally, Plaintiff's claim for fraudulent inducement is also dissimilar from the Lanham Act claim in that it relates to alleged misrepresentations made during contract negotiations. (Am. Compl. ¶¶ 61-64.)

Accordingly, the Court finds that while exact apportionment is impossible, the claims are not "so inextricably intertwined that even an estimated adjustment would be

meaningless." Gracie, 217 F.3d at 1070. A percentage reduction is appropriate in light of the overlap in work performed in relation to each claim. See Piku, 2015 WL 4603171, at *5 ("Courts have held that one acceptable method of apportionment is to reduce the total fee amount by a percentage that represents the work on non-recoverable claims"). However, "[b]ecause the claims share a common core of facts, the Court does not find that a simple division of the hours by [ten] to reflect the [ten] independent claims is a fair apportionment[.]" A.V.E.L.A., 915 F. Supp. 2d at 1189. Based on the Court's "overall sense of [this] suit," the Court will apportion seventy-five percent (75%) of the time billed through September 25, 2012, as time spent in relation to the Lanham Act claim. Fox v. Vice, 563 U.S. 826, 838, 131 S. Ct. 2205, 2216, 180 L. Ed. 2d 45 (2011) ("[t]he essential goal in shifting fees [to either party] is to do rough justice, not to achieve auditing perfection").

Parenthetically, the Court declines to award Defendant fees for work performed on its non-Lanham Act claims as sanctions or pursuant to the Court's inherent authority. (Def.'s Resp. at 16.) The Court also rejects Defendant's argument that an apportionment will undermine the legislative intent regarding an award of fees for "exceptional cases" that implicate bad faith. (Def.'s Resp. at 15.)

As previously noted, Plaintiff also objects to the R&R's failure to exclude time billed for what it characterizes as "identifiable exclusively non-Lanham Act-related motions and projects," which includes five specific motions highlighted by Plaintiff as having no relation to the Lanham Act claim. (Pl.'s Obj. at 13-15, 18.) However, the Court's percentage reduction accounts for work performed on any non-Lanham Act tasks and an additional exclusion would result in a "double-dip."

Accordingly, the Court SUSTAINS Plaintiff's Objections with respect to Judge Lindsay's finding that apportionment was inappropriate and OVERRULES the balance of Plaintiff's Objections. As set forth above, after the adjustments recommended by Judge Lindsay and adopted by this Court are applied to Select Comfort's requested fees and costs of $4,483,755.57, the result is the recommended fee award of $3,507,388.05. (See R&R at 8 n.5, 9-10, 21-22.) The Court has apportioned seventy-five percent of that fee award to work performed in relation to the Lanham Act claim. Thus, when a twenty-five percent reduction is applied to the recommended fee award of $3,507,388.05, the resulting fee award totals $2,630,541.04.

CONCLUSION

For the foregoing reasons, Plaintiff's Objections are OVERRULED IN PART and SUSTAINED IN PART, and Judge Lindsay's R&R is ADOPTED IN PART and REJECTED IN PART. Defendant's motion for attorneys' fees and costs pursuant to 15 U.S.C. § 1117(a) is GRANTED to the extent it is awarded attorneys' fees and costs with the following adjustments: (1) exclusion of time billed by Thomas Marek and Salley Tange of the Oppenheimer firm, (2) exclusion of time billed by Olshon Frome and Bryan Cave, (3) exclusion of fees incurred after September 25, 2012, (4) ten percent reduction of Oppenheimer's overall hours, (5) ten percent reduction for the time spent preparing the fee application, and (6) fifty percent reduction of travel and meal costs. The Court will apply a twenty-five percent reduction in addition to Judge Lindsay's recommended adjustments as an apportionment of Sleepy's Lanham Act and non-Lanham act claims. Accordingly, Defendant is awarded attorneys' fees and costs totaling $2,630,541.04.

SO ORDERED.


/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:     September    30   , 2016
           Central Islip, NY